**Elsa SAENZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–98–00475–CR, 01–98–00476–CR and 01–98–00625–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 4, 2000.

Rehearing Overruled May 25, 2000.

Henry L. Burkholder, III, Houston, Appellant.

Rikke Burke Graber, John B. Holmes, Houston, for State.

Panel consists of Justices O'CONNOR, NUCHIA, and DUGGAN.[1]

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

Appellant, Elsa Saenz, appeals the trial court's order overruling her pre-trial motion to suppress contraband. We affirm.

---

**1.** The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

# I.

## PROCEDURAL HISTORY

Appellant pled guilty in 1994 to two charges of delivery of cocaine weighing less than 28 grams, and was admitted to 10 years probation for each offense. When she was indicted in 1997 for possession of cocaine weighing more than 400 grams with intent to deliver, the State moved to revoke both probations.

Her motion to suppress the 1997 contraband was overruled, and she pled true to the motions to revoke both 1994 probations and guilty to the 1997 charge. The trial court assessed punishment at 10 years confinement in each of the probated cases and 20 years confinement in the new case.

Appellant appeals the two revocations and the new conviction, asserting in each case that the contraband in the new case should have been suppressed.

# II.

## FACTUAL BACKGROUND

Houston Police Officer Fernando Villasana received information around 8 a.m. on June 23, 1997 about a possible shipment of cocaine coming into Houston. Relying on this information, Villasana and other police officers began surveillance on the area of Studewood and White Oak for a 1993 Mazda van driven by two Hispanic females. Villasana located the unoccupied van by a hair salon on White Oak. After watching the van all day, the officers saw appellant come out, walk past the van twice, look around, enter the van, and drive it across the street to an auto detail shop. She parked the van in front of the shop, entered the front door, remained inside for 10–30 seconds, returned to the van, and drove it into the shop stall or bay area farthest from the office.

Appellant went to the shop's office, returned to the van after a few minutes, backed the van out of the stall, turned it around, and backed it into the same stall. This placed the van's rear passenger slid-ing door away from the office and next to the wall. Someone then closed the garage door in front of the stall. Because the officers could no longer view the van, they converged on the shop. Villasana went to the front office and spoke with Mario Reyna, the shop owner. Villasana identified himself, stated that he was conducting a narcotics investigation, and received Reyna's permission to search the shop.

Upon entering the shop's garage, Villasana saw appellant standing alone in the bay area nearest the office. When he identified himself and told her he was conducting a narcotics investigation, appellant appeared concerned and upset. Meanwhile, Officer Oscar Pena walked around the van and saw, on the garage floor, three one-kilogram packages that he recognized as containing cocaine. When Pena informed Villasana of his discovery, Villasana told appellant she was under arrest, read her *Miranda* warnings, and asked for her consent to search the van. She signed a consent form, and the officers briefly searched the van for weapons before waiting for a narcotics detection dog to arrive. The dog led the officers to discover 10 kilograms of cocaine inside the van and 12 kilograms of cocaine in a bag placed on the floor outside the van. Including the three kilograms Pena originally discovered on the floor in plain view, the officers found a total of 25 kilograms of cocaine.

Appellant argues this evidence of cocaine possession was obtained through an illegal search and seizure.

# III.

## STANDARD OF REVIEW

■ In reviewing a trial court's denial of a motion to suppress, we "must be deferential to the trial court's judgment, not only as to historical facts, but also as to the legal conclusions to be drawn from the historical facts." *DuBose v. State*, 915 S.W.2d 493, 497 (Tex.Crim.App.1996). We review the trial court's decision for abuse of discretion, reversing the court's decision

only when it "applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *Id.* at 497–98.

## IV.

### DISCUSSION

Appellant concedes that the owner of the auto detail shop gave the police officers permission to search the garage, and that she, appellant, gave the officers permission to search the van after she was arrested. She contends, however, that the search of the individual stall where the van was located violated her right to privacy, and that the subsequent search and seizure of cocaine in the van was illegal. The State argues that appellant did not have a privacy interest in an open stall in the garage.

■■■ The Fourth Amendment of the United States Constitution and Article I, section 9 of the Texas Constitution safeguard " 'an individual's legitimate expectation of privacy from unreasonable governmental intrusions.' " *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996) (quoting from *Richardson v. State*, 865 S.W.2d 944, 948 (Tex.Crim.App.1993)). A defendant, therefore, has standing under these constitutional provisions "to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded." *Villarreal*, 935 S.W.2d at 138. The defendant bears the burden of establishing:

(a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and

(b) that circumstances existed under which society is prepared to recognize his subjective expectation as objectively reasonable.

*Id.*

*Villarreal* set out the following non-inclusive list of factors that tend to show whether a defendant's subjective expectation of privacy is objectively reasonable:

(1) whether the accused had a property or possessory interest in the place invaded;

(2) whether he was legitimately in the place invaded;

(3) whether he had complete dominion or control and the right to exclude others;

(4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy;

(5) whether he put the place to some private use; and

(6) whether his claim of privacy is consistent with historical notions of privacy.

*Id.*

Viewed in the necessary light, the evidence established that appellant parked the van in a stall of a garage owned by another individual, that the police had permission to search the garage, and that the police found cocaine lying on the open floor near the van. We note that the search of the van, with appellant's permission, was conducted only after the cocaine on the garage floor had been found. Her argument is premised entirely on the contention that the search of the garage and stall around the van was illegal, and that all of the subsequent events (including her consent to search the van) were thus tainted by this initial violation. Our inquiry is therefore confined to whether the search of the garage and floor around the van violated both appellant's subjective privacy expectation and an expectation that society would view as reasonable.

Appellant argues she had a privacy interest in the stall where her van was parked, likening it to the situation of an overnight guest, a hotel room occupant, or a taxi passenger. *See, e.g., Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 1688, 109 L.Ed.2d 85 (1990) (finding that

an overnight guest had "an expectation of privacy in the home that society is prepared to recognize as reasonable"); *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964) (concluding that "a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures"); *Chapa v. State,* 729 S.W.2d 723, 729 (Tex.Crim.App. 1987) (holding that a fare-paying passenger "in a taxicab had a legitimate expectation of privacy in, and hence standing to challenge the search of, the area under the front seat of the taxicab").

▓ These situations are distinguishable. First, in this case, appellant presented no evidence that she paid rent or had any type of lease agreement for the stall where the van was parked; thus, this case is distinguishable from cases involving a hotel guest or taxi passenger. Taken in the light most favorable to the trial court's ruling, this evidence established, at best, that appellant was a temporarily invited guest on someone else's property. Second, as a temporarily invited guest, appellant did not have the same privacy expectation as would an overnight guest. By way of comparison, *Villarreal* found that a non-overnight guest had no reasonable expectation of privacy in a residence when there was no evidence that he "had a property or possessory interest in, or unrestricted access to" the residence, "dominion or control over the residence, ... the right to exclude others," or an intention to stay overnight. 935 S.W.2d at 139.

▓ Similarly, appellant cannot show a property or possessory interest in the garage stall, unrestricted access to the stall (which was apparently open to anyone from within the garage), dominion or control over the stall, the right to exclude others, or even an intention to leave the van in the stall for a definite period of time. Even assuming appellant could have shown that she was a paying customer of the detail shop, we find that an open stall in an auto shop garage does not imply the same expectation of privacy for its users as does a private home for an overnight guest, or as a hotel room or taxi cab for its paying customer. Without addressing whether appellant had a privacy interest in the van while it was in the shop, we note that appellant did not have a reasonable privacy expectation in the floor of the garage. Appellant should have expected that the shop owner would admit other persons into the garage, and that once the police officers were given permission by the shop owner to inspect the premises, they would be able to observe the three kilogram-sized packages of cocaine in plain view outside the van on the open stall floor. Under these facts, appellant has failed to show that she had a subjective expectation of privacy in the open stall where she had parked her van, much less that society as a whole would view this expectation as objectively reasonable.

The trial court did not abuse its discretion in denying appellant's motion to suppress.

Appellant's point of error is overruled for each of the three appeals.

The judgments are affirmed.