Opinion issued December 23, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00264-CR




CARLOS MARTINEZ DOMINGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232rd District Court
Harris County, Texas
Trial Court Cause No. 855730




O P I N I O N

          A jury convicted appellant, Carlos Martinez Dominguez, of the felony of
capital murder for intentionally causing the death of the complainant while in the
course of committing or attempting to commit a robbery. The jury answered Special
Issue One “yes,” finding that appellant would constitute a continuing threat to society. 
The jury answered Special Issue Two “yes,” finding that a sufficient mitigating
circumstance or circumstances warranted a life sentence rather than a death sentence. 
Accordingly, the trial court imposed a life sentence. In point of error one, appellant
contends that the evidence was factually insufficient to support a conviction for
capital murder. In points of error two and three, appellant complains that the trial
court erred in denying his motion to suppress the firearm. In point of error four,
appellant asserts that the trial court erred by denying his motion for a mistrial based
on the State’s closing arguments at the guilt-innocence stage. We affirm.
Background
          Appellant was a member of the southwest Houston street gang known as “La
Primera” or “LP.” In the early morning of July 10, 2000, appellant and at least six
fellow LP members cruised along Richmond Avenue in southwest Houston in three
separate vehicles looking for someone to rob. It was the understanding among the LP
gang members that if any member’s car stopped near an individual walking alone, the
other members would stop their cars as well, as they had done on previous occasions. 
All the gang members would then proceed to rob the individual.
          The gang first spotted Brandon Williams walking down a street off Richmond
Avenue and proceeded to attack and rob him. In addition to their fists, the gang
members used a crowbar to assault Williams. Williams was able to escape the attack
by running and hiding beneath a car at a nearby house.
          After Williams escaped, the LP gang turned their attention to William Brown
and proceeded to attack him. Brown fought back against the gang members. He
tossed a wad of cash to the ground, and one of the attackers retrieved the money. As
the attack continued, at some point appellant retrieved a loaded shotgun from the
trunk of one of the gang member’s cars. Appellant used the shotgun to shoot Brown,
who later died from his injury. No weapon was recovered at the scene of the crime,
but the police did recover a spent shotgun shell.
          On August 29, 2000 Houston Police Officers Perla and Richards were
dispatched to the apartment of Eduardo Caraballo to search for a runaway minor, C.R. 
C.R. was appellant’s fifteen-year-old girlfriend. Officer Perla asked Caraballo for
permission to enter his apartment with Officer Richards to search for C.R. Caraballo
allowed the officers into his home and permitted the search. Shortly thereafter, the
officers’ supervisor, Sergeant Lei, arrived at the apartment and joined in the search. 
Appellant and another male, Paul Garcia, were present in a bedroom of the apartment. 
During this search, the shotgun used to shoot Brown was discovered in the apartment.
          After the police located C.R. in a bathroom of the apartment, they questioned
the men about who owned the shotgun. Caraballo responded that the shotgun
belonged to appellant, but appellant denied ownership. Because no one claimed
ownership of the shotgun, Sergeant Lei deemed the shotgun “found property,” seized
it, tagged it, and had it transferred to the Houston Police Department’s property room. 
A firearms examiner employed by the Houston Police Department testified that the
fired 12 gauge Winchester shotgun shell recovered from the homicide scene had
markings demonstrating that it had been inside the shotgun recovered from
Caraballo’s apartment.
Factual SufficiencyIn his first point of error, appellant contends that the evidence was factually
insufficient to prove that he intentionally murdered William Brown in the course of
a robbery. The State first contends that appellant has waived the right to appeal his
conviction on the grounds of factual sufficiency for failure to present the issue to the
trial court. Tex. R. App. P. 33.1(a)(1)(A).
          The State’s waiver challenge is two-pronged. First, the State argues that
because rule 33.1(d) of the Rules of Appellate Procedure expressly permits non-preserved factual sufficiency review in non-jury trials, the rule impliedly disallows
non-preserved factual sufficiency review in jury trials. See Tex. R. App. P. 33.1(d). 
Second, the State argues that caselaw suggests that only legal sufficiency, and not
factual sufficiency, claims may be presented for the first time on appeal. See, e.g.,
Rankin v.State, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001) (explaining that legal
sufficiency claim need not be preserved in trial court, but not reaching factual
sufficiency issue because not presented to court of appeals). We disagree with the
State. A claim regarding factual sufficiency of the evidence need not be preserved
in the trial court in a criminal case. Washington v. State, No. 01-02-00926-CR, slip
op. at 11-12, 2003 WL 22456200, at *5 (Tex. App.—Houston [1st Dist.] Oct. 30,
2003, no pet. h.).
          When reviewing the factual sufficiency of evidence, we examine all the
evidence neutrally and ask whether proof of guilt is so obviously weak as to
undermine confidence in the jury’s determination or so greatly outweighed by
contrary proof as to indicate that a manifest injustice has occurred. Zuliani v. State,
97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003); King v. State, 29 S.W.3d 556, 563
(Tex. Crim. App. 2000); Valencia v. State, 51 S.W.3d 418, 423 (Tex. App.—Houston
[1st Dist.] 2001, pet. ref’d). In conducting our analysis, if probative evidence
supports the verdict, we must avoid substituting our judgment for that of the
trier-of-fact, even when we disagree with its determination. King, 29 S.W.3d at 563. 
We may not intrude upon the jury’s role as the sole judge of the weight and credibility
of witness testimony. Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). 
Accordingly, we will reverse only if, after viewing all the evidence neutrally, we
determine that the verdict is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996).
          A person commits capital murder if he intentionally or knowingly causes the
death of an individual and intentionally commits the murder in the course of
committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual
assault, arson, or obstruction or retaliation. Tex. Pen. Code Ann. §§ 19.02(b)(1),
19.03(a)(2) (Vernon 2003). A person commits robbery if, in the course of committing
theft and with intent to obtain or maintain control of the property, he intentionally,
knowingly, or recklessly causes bodily injury to another, or intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. 
Tex. Pen. Code. Ann. § 29.02(a) (Vernon 2003).
          Intent is most often proven through the circumstantial evidence surrounding
the crime. Hernandez v. State, 819 S.W.2d 806, 819 (Tex. Crim. App. 1991). A jury
may infer intent from any facts that tend to prove its existence, such as the acts,
words, and conduct of the defendant. Id. Additionally, intent to kill may be inferred
from the use of a deadly weapon, unless it would not be reasonable to infer that death
or serious bodily injury could result from the use of the weapon. Jones v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996); Ahrens v. State, 43 S.W.3d 630, 634 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). A shotgun is a deadly weapon per se. 
See Hill v. State, 913 S.W.2d 581, 590 (Tex. Crim. App. 1996).
          Appellant’s factual-sufficiency challenge relies on the following: (1) no
evidence established that appellant agreed with the members of his gang to rob
anyone; (2) no evidence was introduced that anyone ever demanded money or other
property from Brown; (3) no evidence established that appellant ever intended, or
stated that he intended, to kill or rob anyone; (4) no evidence established that the
shotgun fired as a result of Brown’s grabbing or touching it during the struggle; (5)
no evidence indicated that the recovered shotgun shell had been fired from the
shotgun linked to appellant; and (6) Brown threw the money to the ground for some
reason other than a threat or request from appellant or his gang.
          The jury, however, could reasonably have found the following from the
evidence: (1) appellant and the members of his gang planned to rob an individual
they found walking alone at night; (2) appellant and the members of his gang first
attempted to rob Brandon Williams, who managed to escape; (3) appellant and the
members of his gang then turned their attention to William Brown, another individual
they found walking alone, and attempted to rob him; (4) in the course of the theft or
attempted theft of Brown, appellant retrieved a loaded shotgun from the trunk of one
of the fellow gang member’s cars and shot Brown in the abdomen from a distance of
three feet or greater; and (5) Brown died as a result of the gunshot wound.
          The jury was entitled to infer intent to kill from appellant’s use of a deadly
weapon. See Jones, 944 S.W.2d at 647; Ahrens, 43 S.W.3d at 634. Additionally, the
jury was entitled to infer intent to kill from appellant’s acts and conduct. See
Hernandez, 819 S.W.2d at 810. We conclude that the verdict is not so against the
great weight and preponderance of the evidence as to be manifestly unjust, and that
the proof of guilt is not so weak as to undermine confidence in the jury’s
determination. Clewis, 922 S.W.2d at 129.
          We overrule appellant’s first point of error.
Suppression of Firearm
          In his second and third points of error, appellant claims that the shotgun was
seized in violation of both the Texas Constitution and the Fourth Amendment to the
United States Constitution. U.S. Const. amend IV; Tex. Const. art I, § 9. The State
responds that appellant lacked standing to assert his motion to suppress, and that the
shotgun was found as a result of a voluntary consent to search Caraballo’s apartment.
          In a suppression hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The trial court may accept or reject all
or any part of a witness’s testimony. Id. When the trial court makes no express
findings of fact, we review the evidence in the light most favorable to the trial court’s
ruling and assume that the trial court made implicit findings of fact that support the
ruling as long as those findings are supported by the record. Id. If the trial judge’s
decision is correct on any theory of law applicable to the case, the decision will be
sustained. Id. at 855-56.
          To assert a constitutional challenge to a search and seizure, a party must first
establish standing. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996); Saenz v. State, 17 S.W.3d 403, 406 (Tex. App.—Houston [1st Dist.] 2000, no
pet.). A party establishes standing by showing that he exhibited an actual subjective
expectation of privacy and that this expectation is one that society is prepared to
recognize as objectively reasonable. Villarreal, 935 S.W.2d at 138; Saenz, 17 S.W.3d
at 406. An individual has no reasonable expectation of privacy in property that he
abandons or disclaims. See Abel v. United States, 362 U.S. 217, 241, 80 S. Ct. 683,
698 (1960); Citizen v. State, 39 S.W.3d 367, 372 (Tex. App.—Houston [1st Dist.]
2001, no pet.). Whether an individual has abandoned or disclaimed property may be
inferred from his words, acts, or other facts. Armstrong v. State, 966 S.W.2d 150, 153
(Tex. App.—Austin 1998, no pet.)
          The police officers searched Caraballo’s apartment after obtaining his consent. 
When asked who owned the shotgun, Caraballo indicated that it belonged to
appellant, but appellant denied ownership. Although the trial court made no express
findings of fact regarding ownership of the shotgun, viewing the evidence in the light
most favorable to the trial court’s ruling, we conclude that the record supports the
trial court’s implied finding that the search was conducted with Caraballo’s consent
and that appellant disclaimed the shotgun. See Ross, 35 S.W.3d at 855. Accordingly,
appellant lacked standing to challenge the State’s seizure of the shotgun. We hold
that the trial court did not abuse its discretion by denying appellant’s motion to
suppress the firearm.
          We overrule appellant’s second and third points of error. 
State’s Closing Argument
          In his fourth point of error, appellant claims that the trial court erred by failing
to grant a mistrial following the prosecutor’s allegedly inflammatory statements
during guilt-innocence closing arguments.
          Permissible prosecutorial jury argument falls within four categories: (1)
summation of the evidence; (2) reasonable deductions from the evidence; (3) pleas
for law enforcement; and (4) response to opposing counsel. Jackson v. State, 17
S.W.3d 664, 673 (Tex. Crim. App. 2000); Goldberg v. State, 95 S.W.3d 345, 388
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).
          Appellant makes six complaints regarding the State’s closing argument. First,
appellant points out that the prosecutor misstated the law regarding felony murder. 
The court sustained appellant’s objection and instructed the jury to disregard the
statement. Appellant, however, failed to move for a mistrial. To preserve jury-argument error, a party must: (1) contemporaneously object to the statement; (2) if the
objection is sustained, request an instruction that the jury disregard the statement;
and, (3) if the instruction is granted, move for a mistrial. Cooks v. State, 844 S.W.2d
697, 727-28 (Tex. Crim. App. 1992). Because appellant did not move for a mistrial,
no error was preserved for appeal. See id.
          Second, appellant claims that the prosecutor made an improper argument by
suggesting that the jury take as much time as needed to deliberate, although, in
reality, it would not need much time to reach a verdict. Appellant’s objection on the
basis of improper argument was overruled. According to appellant, the State’s
argument impliedly asserted that the evidence establishing appellant’s guilt was
conclusive and that, therefore, the jury would reach a decision quickly. We conclude
the State’s argument was proper as a summation of the weight of the evidence. See
Jackson, 17 S.W.3d at 673; Goldberg, 95 S.W.3d at 388.
          Third, appellant complains that it was improper for the prosecutor to argue that
the State’s witnesses would need to “grow eyes in the backs of their heads and they
better watch for the defendant’s good buddy Puppet.” Appellant objected to the
statement as outside the record and improper, but the trial court overruled the
objection. “Puppet” was one of the members of appellant’s gang who testified on
appellant’s behalf. During cross-examination, “Puppet” testified that “snitches need
to get their ass beat down real hard.” Several other members of appellant’s gang
identified appellant as the shooter when they were called to testify by the State. In
light of “Puppet’s” comment, we conclude that the prosecutor’s statement was a
reasonable deduction from the evidence. See Jackson, 17 S.W.3d at 673; Goldberg,
95 S.W.3d at 388.
          Fourth, appellant contends that the prosecutor’s statement. “[T]he Defense
doesn’t have to give any kind of reciprocal indictments . . . [W]e kind of figure out
the defense as the trial goes on,” intentionally directed the jury’s attention to
appellant’s election not to testify. Appellant failed to object to the statement and,
therefore, preserved no error for review. See Cooks, 844 S.W.2d at 727-28
          Fifth, appellant asserts that the prosecutor commented on appellant’s failure to
testify, thus violating his Fifth Amendment protections against self-incrimination. 
U.S. Const. amend. V. The State violates a defendant’s Fifth Amendment right
against compelled self-incrimination by referring to a defendant’s invocation of his
right not to testify. Canales v. State, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003);
Emigh v. State, 916 S.W.2d 71, 73 (Tex. App.—Houston [1st Dist.] 1996, no pet.). 
To be improper, a comment must clearly refer to the defendant’s failure to testify. 
Canales, 98 S.W.3d at 695. The nature of the comment must be either “manifestly
intended” or of such a character that it would “necessarily and naturally” direct the
jury’s attention to the defendant’s silence. Id. A comment that is at best indirect or
allusive does not violate the defendant’s Fifth Amendment rights. Id.
          Here, the prosecutor made the statement:
These are two good lawyers. [Appellant] hasn’t given them much to
work with, has he? The defense is we’re going to attack all the
witnesses, trash out all the victims, throw a lot of stuff up.

Appellant objected to this statement as a comment on his failure to testify. The trial
court sustained the objection and instructed the jury to disregard the prosecutor’s
statement. Appellant moved for a mistrial, and the court denied the motion. The
prosecutor then responded that he intended his statement to mean that the facts of the
case did not give the defense much to work with, not appellant himself. Given this
context, we cannot conclude that the statement was either “manifestly intended” or
was of such a character that it would “necessarily and naturally” direct the jury’s
attention to appellant’s exercising his right not to testify. Id. Moreover, the trial
court instructed the jury to disregard the statement. An instruction to disregard will
cure all but the most blatant comments. Moore v. State, 999 S.W.2d 385, 405-06
(Tex. Crim. App. 1999). We conclude that the prosecutor’s comment did not
necessarily or naturally direct the jury’s attention to appellant’s decision to remain
silent. See Canales, 98 S.W.3d at 695. Additionally, any potential harm was cured
by the trial court’s instruction to the jury to disregard the statement. See Moore, 999
S.W.2d at 405-06.
          Finally, appellant contends that a mistrial should have been granted after the
prosecutor referred to appellant’s “loading and unloading the shotgun time after time”
and compared that action to how baseball players practice throwing a ball into a glove
before a game. Appellant objected that this argument was outside the record, and the
trial court sustained the objection. Following an instruction to the jury to disregard
the statement, the trial court denied appellant’s motion for a mistrial.
          Here, the firearms examiner testified that the shotgun shell found at the scene
of the murder had markings demonstrating that it had been put in and taken out of
appellant’s shotgun at least eight times. Although no direct evidence established that
appellant himself loaded or unloaded the gun, the record evidence established that
appellant owned the gun, retrieved the gun from a vehicle, and shot the deceased. 
The State’s closing argument that appellant had loaded and unloaded the shotgun
prior to killing the deceased was a reasonable deduction from the evidence, which
established that appellant owned the gun and that the gun had been loaded and
unloaded multiple times prior to the offense. See Jackson, 17 S.W.3d at 673; 
Goldberg, 95 S.W.3d at 388. Although the trial court sustained the objection, the
statement, in light of the record as a whole, was not so extreme or manifestly
improper as to harm appellant. See Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim.
App. 1997). Furthermore, any potential harm was cured by the trial court’s
instruction to disregard the statement. Moore, 999 S.W.2d at 405-06.
          We overrule appellant’s fourth point of error.
Conclusion
          We affirm the judgment of the trial court.
 

                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Publish. Tex. R. App. P. 47.4(b).