**Noel Betancort RAMON, Appellant,**

v.

**The STATE of Texas.**

**No. PD–2030–03.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 15, 2004.

---

1. TEX. CODE CRIM. PROC., Art. 11.65(b)(emphasis added).

928

Adam L. Kobs, San Antonio, for Appellant.

Lucy Cavazos, Asst. DA, Kerrville, Matthew Paul, State's Atty., Austin, for State.

**1.** "The court of appeals erred in finding no harmful error where the sole prosecutor called herself as a fact witness to testify to a material issue in front of the jury, objected to

*OPINION*

JOHNSON, J., delivered the unanimous opinion of the Court.

During appellant's trial for aggravated sexual assault, the trial court allowed the prosecutor to take the stand and testify about a collateral matter, over defense objection. The defense was not permitted to cross-examine the prosecutor, and after a sidebar discussion, the trial court sustained the defense motion to strike the prosecutor's testimony. The court instructed the jury to disregard the prosecutor's testimony, but denied the defense request for a mistrial. The prosecutor continued to prosecute the case and made reference to the subject of her testimony during closing arguments. The jury convicted appellant of one count of aggravated sexual assault. TEX. PEN.CODE § 22.021. The trial court assessed appellant's sentence, enhanced by prior felony convictions, at life imprisonment.

On appeal, appellant argued that the trial court should have granted a mistrial based on the prosecutor's actions, claiming that they deprived him of a fair trial. However, the court of appeals upheld the judgment of the trial court, holding that the prosecutor's testimony did not affect appellant's substantial rights, and that the trial court therefore did not abuse its discretion in denying the motion for a mistrial. *Ramon v. State*, No. 04–02–00219–CR, 2003 Tex.App. LEXIS 7892, 2003 WL 22082410 (Tex.App.-San Antonio, September 10, 2003)(not designated for publication).

We granted review to determine whether the court of appeals erred in finding no harmful error.[1] The question is not one of

being cross examined, resumed her advocate role in the trial and then argued her credibility to the jury."

harm *per se,* however, but rather whether the court of appeals erred in finding that the trial court did not abuse its discretion when it denied the motion for a mistrial. As we recently noted, "the question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App.2004). Therefore, as we did in *Hawkins,* we will address the issue by applying the test articulated in *Mosley v. State,* 983 S.W.2d 249 (Tex.Crim.App. 1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

*Mosley* involved prosecutorial misconduct in the form of improper jury argument, but the holding is equally applicable to the prosecutor's testimony in this case. In determining whether the argument warranted a mistrial, the *Mosley* Court balanced three factors:

> (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

*Id.* at 259.

In this case, the prosecutor's request to testify was triggered by the admission of a telephone message that she had left with Dr. Chad Hainley, the state's DNA expert. The record indicates that Dr. Hainley called the prosecutor to ask whether the state would be sending any samples of other individuals' DNA for comparison purposes. In response, the prosecutor called Dr. Hainley's office, and left a message that was recorded in Dr. Hainley's office as "Noel Ramon case. The grandson and his roommate had access to the home, but they only care about suspect's DNA."

The defense introduced the message, apparently to show that the state had focused its investigation on the defendant and ignored evidence that potentially inculpated others. The prosecutor argued that she needed to testify in order to correct a "false impression" left by the defense's introduction of the message. She argued that, at the time of the message, she understood that appellant's defense at trial was to be that he was not present at the scene of the crime, and therefore that the state was concerned only with defeating his claim by showing the presence of his DNA. This was the substance of her testimony, which the court eventually instructed the jury to disregard.

Later in the trial, the state recalled Dr. Hainley to rebut the testimony of the defense DNA expert. On cross-examination, when asked whether he had tried to obtain any "standards" other than the defendant's in this case, Dr. Hainley explained that he had contacted the prosecutor to see if other DNA samples would be submitted. During her closing argument, the prosecutor said: "With regard [sic] Chad Hainley called me because he was concerned, Chad Hainley called me to see if we were going to submit any other samples, not because he was concerned."

In its opinion, one judge writing and two judges concurring in the judgment, the court of appeals ruled that the trial court did not abuse its discretion when it denied appellant's motion for mistrial because appellant had failed to show how the prosecutor's remarks prejudiced his case. In her concurring opinion, Justice Stone chastised the prosecutor for her unprofessional behavior.

> I believe that permitting the prosecutor to testify was error, and as to the prosecutor, a violation of Rule 3.08(a) of the

Texas Disciplinary Rules of Professional Conduct. See TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a), reprinted in TEX. GOV'T. CODE ANN., tit. 2, subtit. G, app. A (Vernon 1998). The circumstances giving rise to the prosecutor's request to testify did not, in my opinion, present "extraordinary circumstances or ... compelling reasons." *See Riddle v. Cockrell*, 288 F.3d 713, 721 (5th Cir.2002) (holding that a prosecutor should be allowed to testify only in extraordinary circumstances). If the State perceived the introduction of Exhibit 11 as impeachment of the DPS laboratory analysis or the prosecutor's motive, the State could have easily discredited the attempted impeachment through its questioning of the State's forensic expert. Taking the "highly unusual and potentially prejudicial" route of allowing the sole prosecutor to take the witness stand was simply unnecessary.

*Ramon v. State*, 2003 Tex.App. LEXIS 7892 at *10–11, 2003 WL 22082410 at *1, (Stone, J., concurring in judgment).

In his petition for discretionary review, appellant argues that, in light of this Court's recent decision in *Gonzalez v. State*, 117 S.W.3d 831 (Tex.Crim.App. 2003), he has met his burden of showing that the prosecutor's testimony prejudiced his case. In *Gonzalez*, the defense counsel was disqualified before trial began because he was expected to testify to a contested matter bearing directly on the defendant's guilt. The appellant in *Gonzalez* argued that the trial court's decision to disqualify his attorney interfered with his constitutionally guaranteed right to the counsel of his choosing. *Id.* at 836–37. However, this Court looked to United States Supreme Court precedent, and found that "the presumption in favor of petitioner's counsel of choice may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for

conflict." *Id.* at 844, *citing Wheat v. United States*, 486 U.S. 153, 163–64, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). This Court found that the record supported the trial court's decision to disqualify defense counsel:

> If counsel were to have testified, the State would have been prejudiced not only by the undue weight jurors might have attach [sic] to counsel's testimony, but also by the confusion that would most likely have resulted during argument regarding whether counsel was summarizing evidence or further testifying as to personal knowledge.... The State would have been prejudiced by the inability to clarify counsel's testimony and impeach counsel's credibility.

*Gonzalez*, 117 S.W.3d at 840.

Appellant here argues that the same dangers that the *Gonzalez* court described in finding *potential* prejudice produced a presumption of *actual* prejudice to his case when the prosecutor testified, and then continued to prosecute the case. Furthermore, appellant asserts that by referring to the subject of her testimony during closing arguments, the prosecutor improperly argued her own credibility to the jury.

We find the situation in *Gonzalez* distinguishable. In that case, the trial court made its finding and the defense attorney was disqualified before the trial began, thereby averting the situation that is before us in this case. The appellate court in *Gonzalez* was called upon to review the trial court's determination that the potential for conflict necessitated the disqualification of counsel. According proper deference to the finding of the trial court, the court of appeals upheld that finding.

In this case, the trial court first ruled that the prosecutor could testify. Then, after the prosecutor testified about the telephone message but refused to allow

herself to be cross-examined, the trial court instructed the jury to disregard the testimony, but overruled the defense motion for a mistrial. Therefore, the court of appeals in this case was called upon to review the trial court's failure to declare a mistrial, using an abuse of discretion standard. The court of appeals was unable to find that the trial court abused its discretion.

■■■ We agree that the prosecutor's behavior was improper.[2]

"The concepts of due process and fundamental fairness require a separation between the State's advocates and its witnesses. The prosecutor who tries a case should not testify as a witness in regard to a contested matter absent a showing that his testimony is necessary. Such necessity generally involves a showing that the testimony is important to the State's case or required to rebut the defendant's case and that the need for the testimony could not reasonably have been anticipated.... A prosecutor who tries the case must take reasonable precautions to prevent himself from becoming entangled in the trial as a witness.... If, during the middle of trial, the prosecutor's testimony becomes necessary, and the prosecutor does not withdraw from participation, he should never argue his credibility to the jury.... A prosecutor's failure to follow the above principles seriously jeopardizes a defendant's right to a fair trial.... This conclusion is grounded upon the 'recognition of the power and influence [the prosecutor] exerts' in a criminal prosecution....' Moreover, in addition to the danger that the prosecutor's position may artificially enhance the credibility of his testimony, the prosecutor's participation in closing arguments after the testimony may generate confusion among the jury about whether the prosecutor is speaking as an advocate or as a witness."

*Brown v. State*, 921 S.W.2d 227, 231 (Tex.Crim.App.1996)(Keller, J., concurring) (citations omitted).

However, as the court of appeals below found, the subject matter of the prosecutor's testimony in this case was not of great consequence to the outcome of the case.

■ In regard to the second *Mosley* factor, we find that the trial court's instruction to disregard was sufficient to cure the error in allowing the prosecutor to testify in this case. The prosecutor's reference to Dr. Hainley during closing argument could be interpreted as a reference to Dr. Hainley's testimony when he was recalled, rather than to the prosecutor's own testimony. It is a well-accepted principle that the admission of improper evidence will not require reversal if the same facts are proved by "other and proper" testimony. *Alvarez v. State*, 511 S.W.2d 493, 498 (Tex.Crim.App.1974).

Finally, the third factor in the *Mosley* balancing test requires us to determine the likelihood that appellant would have been convicted absent the misconduct. The evidence against appellant included eyewitness identification placing him at the scene of the crime. While the victim, who was

**2.** We further note that the same prosecutor's actions were at issue in another recent case before this Court. *Flores v. State*, 90 S.W.3d 875 (Tex.App.-San Antonio, 2002). In that instance, the prosecutor called defense counsel as a witness, arguing, as she did in this case, that it was necessary to correct a "false impression" left by the defense. The court of appeals found the error harmless, but noted that an issue of " 'false impressions' left by defense counsel's questioning of witnesses is best addressed by skillful re-direct or re-cross examination by the State, not by calling defense counsel as a witness." Id. at 884.

elderly and appeared to have problems with her memory, could not identify him by the time of trial, the eyewitness, who knew appellant well, testified that he had seen appellant leaving the victim's bedroom, fastening his pants, immediately after the assault allegedly occurred. The victim told the eyewitness that appellant had just sexually assaulted her, and the eyewitness called the police.

DNA evidence placed appellant's sperm on one of the victim's bed sheets, and his palm prints were found on the victim's headboard. While the prosecutor's testimony related to the fact that there were numerous stains on the victim's sheets that did not contain appellant's DNA, this fact by itself is not particularly exculpatory. The state's reasons for not going to the trouble to determine the sources of the other stains are not necessarily relevant to the question of who assaulted the victim. In this case, the fact that appellant's sperm was present on the victim's sheets was sufficient to place him at the scene, supporting the eyewitness' statement.

Given the strength of the evidence against appellant, the court's instruction to the jury to disregard the prosecutor's testimony, and the tangential nature of that testimony, we do not find an abuse of discretion in the trial court's failure to declare a mistrial. Therefore, we affirm the judgment of the court of appeals.