NUMBER
13-10-00218-CR

 

COURT
OF APPEALS

 

THIRTEENTH
DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DEGOVERDO DOMINGUEZ,                                                       Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                
Appellee.

 

 



On
appeal from the 24th District Court

of Victoria
County, Texas.

 

 



MEMORANDUM
OPINION

 

Before
Chief Justice Valdez and Justices Rodriguez and Benavides

Memorandum
Opinion by Chief Justice Valdez

 

Appellant, Degoverdo Dominguez, was charged by indictment
with aggravated sexual assault of a child, a first-degree felony.  See Tex. Penal Code Ann. §
22.021(a)(1)(B)(iv), (2)(B)(1), (e) (Vernon Supp. 2010).  A jury convicted
Dominguez of the offense, and the trial court sentenced him to life
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  By one issue, Dominguez argues that his conviction should be vacated
and the case remanded for a new trial because the State made improper remarks
during its closing argument.  We affirm.

I.             
Background

The indictment in this case alleged that Dominguez
intentionally or knowingly used his sexual organ to contact the anus of J.C.,[1] Dominguez’s
nine-year-old nephew.  See id. § 22.021(a)(1)(B)(iv).[2]  At trial, the
State called several witnesses to testify about the incident.  F.G., J.C.’s
stepfather, testified that he is married to J.C.’s biological mother, G.G.;
that Dominguez is G.G.’s brother; and that Dominguez goes by the nickname of
“Dago.”

One day after school, F.G. and J.C. were playing catch
with a football outside.  Shortly thereafter, F.G. and J.C. went inside to take
a break because it was hot.  Once inside, J.C. became nervous and scared and subsequently
told F.G. about the incident.  According to F.G., J.C. stated that he believed
“Uncle Dago” was gay.  When asked what was meant by that statement, J.C.
explained that Dominguez “had touched [J.C.], pulled down [J.C.’s] pants, and
[Dominguez] would turn [J.C.] around and put his hands on [J.C.] and that
[Dominguez] put his penis in his back and started doing back and forth motions
on [J.C.].”  F.G. later clarified that J.C. told him that Dominguez had put his
penis on J.C.’s “bottom.”  J.C. pleaded with F.G. not to tell G.G. because Dominguez
had told him not to tell anyone, and because J.C. feared that Dominguez would
be angry with him.

            Despite
J.C.’s protests, F.G. told G.G. about the incident.  F.G. also recalled that
Dominguez babysat J.C. often and that many of those visits resulted in J.C. spending
the night with Dominguez.  After telling G.G. about the alleged abuse, the
family reported the incident to police.

            Cynthia
Ramirez, a forensic interviewer with the “Hope of South Texas Center,”
testified that she interviewed J.C. regarding the incident.  When the interview
began, J.C. was excited and happy; however, as they began to talk about the
incident, J.C. became shy and nervous.  J.C. demonstrated to Ramirez what had
happened during the incident and showed how Dominguez would get on top of him and
would move “up and down.”

            J.C.
also testified as to his recollection of the incident.  J.C. stated that
Dominguez would babysit him while F.G. and G.G. would go out for dinner.  J.C.
remembered that he had slept at Dominguez’s house thirty or forty times. 
Dominguez lived in a house with two other roommates, but J.C. noted that
Dominguez had his own room and that the roommates never participated in the
alleged abuse.  When staying at Dominguez’s house, J.C. would sleep in the same
bed as Dominguez in Dominguez’s room.  J.C. also testified that Dominguez had
told him to drink beer in the past.  Regarding the incident, J.C. stated that
he would be forced to lie face-down on the bed and that Dominguez would get on
top of him.  J.C. knew that Dominguez was on top of him because he could feel
Dominguez’s stomach on his back.  Dominguez would then pull down J.C.’s shorts
and underwear to J.C.’s thighs and “go up and down.”  J.C. was told to turn
around and to face the wall while the alleged abuse occurred.  J.C. alleged
that:  (1) Dominguez touched J.C’s “private” with his hands; and (2) he felt
Dominguez’s “wee-wee,” which J.C. later identified as Dominguez’s penis, on his
“butt.”  After the incident, J.C. had to go “number two,” and Dominguez made
him promise not to tell anyone.

            After
the State rested its case-in-chief, Dominguez moved for a directed verdict. 
The trial court denied Dominguez’s request, and the case was submitted to the
jury.  The jury ultimately convicted Dominguez of first-degree felony
aggravated sexual assault, and the trial court sentenced him to life
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  See Tex. Penal Code
Ann. § 22.021(a)(1)(B)(iv), (2)(B)(1), (e).  This appeal ensued.      

II.           
The State’s Closing Argument

By his sole issue on appeal, Dominguez argues that the
State made remarks during its rebuttal to his closing argument which “tainted
the verdict, harmed defendant[,] and caused an unjust verdict.”  Specifically,
Dominguez complains about the following statements made by the State during
closing argument:

That’s
why I ask that you go back into the jury room, you elect a Foreman.  It doesn’t
have to take long.  I’m not asking you not to consider the evidence.  You
don’t owe this defendant anything.  You’ve been away from your jobs and family
two days and that’s too long . . . .

 

(Emphasis
added).  Dominguez’s trial counsel objected and requested that the jury be
instructed to disregard the State’s remark; however, the trial court overruled
Dominguez’s objection and refused to issue the requested instruction.  Because
Dominguez objected to the error about which he complains on appeal and pursued
his objection to an adverse ruling, we conclude that this issue has been preserved
for our review.  See Landry v. State, 706 S.W.2d 105, 109 (Tex. Crim.
App. 1985) (holding that any improper jury argument is waived by a party’s
failure to object); see also Gonzales v. State, No. 13-04-628-CR, 2006
Tex. App. LEXIS 4020, at *5 (Tex. App.–Corpus Christi May 11, 2006, pet. ref’d)
(mem. op., not designated for publication).  

A.   Applicable
Law

Permissible jury argument generally falls into one of
four areas:  (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for
law enforcement.  Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim. App.
2008); Berry v. State, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). 

Even when an argument
exceeds the permissible bounds of these approved areas, such will not
constitute reversible error unless, in light of the record as a whole, the
argument is extreme or manifestly improper, violative of a mandatory statute,
or injects new facts harmful to the accused into the trial proceeding.

 

Wesbrook
v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing Todd
v. State, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980)).  “The remarks
must have been a willful and calculated effort on the part of the State to
deprive appellant of a fair and impartial trial.”  Id. (citing Cantu
v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).

Nevertheless, when analyzing any harm that may have been
caused by an improper jury argument, we examine the following factors:  (1) the
severity of the misconduct (the magnitude of the prejudicial effect of the
prosecutor’s remarks); (2) measures adopted to cure the misconduct (the
efficacy of any cautionary instruction by the judge); and (3) the certainty of
conviction absent the misconduct (the strength of the evidence supporting the
conviction).  Ramon v. State, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004)
(citing Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op.
on reh’g)).

B.   Discussion

            Responding
to Dominguez’s complaint on appeal, the State asserts that its remarks during
closing argument were not “extreme, improper, harmful[,] or prejudicial” and
that the remarks constituted a reference to the overwhelming weight of the
evidence.  We agree.

            In
analyzing the State’s remarks during closing argument, we must not consider the
statements in isolation; instead, we should review the closing arguments of
both parties in order to determine the context in which the complained-of
statements were made.  See Wilson v. State, 938 S.W.2d 57, 61 (Tex.
Crim. App. 1996) (“The applicable legal standard of review is whether, in
light of the record as a whole, there is a reasonable possibility the
improper argument might have contributed to appellant’s conviction.”) (emphasis
added); see also Ozuna v. State, 199 S.W.3d 601, 613 (Tex. App.–Corpus
Christi Aug. 10, 2006, no pet.) (holding that the complained-of jury argument
is considered in light of the record as a whole).  In reviewing the State’s
closing argument and rebuttal, we find that the complained-of statements countered
several assertions made by Dominguez’s trial counsel during his closing argument
regarding the perceived weakness or non-existence of physical evidence tying
Dominguez to the charged offense.  See Brown, 270 S.W.3d at 570; see
also Berry, 233 S.W.3d at 859.  In particular, Dominguez’s trial
counsel argued that:

Now
this whole case is—You heard evidence from witnesses that never saw anything. 
All they said was what they were told.  It was, basically, hearsay, going on
what they were told.  There was [sic] no eyewitnesses.

 

            As
you heard the SANE witness testify, there was no physical manifestation of any
injury.  And I would submit, if something was going on that long, there would
be some kind of physical evidence.

 

            In
this day and age, when we have the ability to get DNA and physical evidence,
all kinds of advanced physical evidence, to be unable to be able to produce
some kind of physical evidence, that is not beyond a reasonable doubt.  That’s
not competent evidence.  And I would submit to you, just based upon those
bases, the D.A. failed to prove their case.  

 

The
complained-of statements made by the State responded to the statements made by
defense counsel that there was no competent evidence to support the charges
against Dominguez.  See Brown, 270 S.W.3d at 570; see also
Berry, 233 S.W.3d at 859.  

            Furthermore,
this situation is akin to that in the case of Dominguez v. State, 125
S.W.3d 755, 763 (Tex. App.–Houston [1st Dist.] 2003, pet. ref’d).  In Dominguez,
the State, during closing argument, suggested that “the jury take as much time
as needed to deliberate, although, in reality, it would not need much time to
reach a verdict.”  Id.  The First Court of Appeals concluded that such
an argument was proper as a summation of the weight of the evidence, even
though appellant argued on appeal that such an argument “impliedly asserted
that the evidence establishing appellant’s guilt was conclusive and that,
therefore, the jury would reach a decision quickly.”  Id.  Here, the
State made a similar argument when taken in the context of the entire record. 
The State’s argument refuted defense counsel’s argument that there was no
competent evidence adduced at trial to convict Dominguez of the charged offense
and suggested that the evidence in support of convicting Dominguez was so
overwhelming that the jury should be able to quickly return a guilty verdict,
which would constitute a proper summation of the evidence.  Thus, based on our
review of the record, we cannot say that the State’s remarks during its closing
argument and rebuttal constituted a “willful and calculated effort on the part
of the State to deprive appellant of a fair and impartial trial.”[3]  See Wesbrook,
29 S.W.3d at 115; see also Cantu, 939 S.W.2d at 633.

            Further,
even if we were to assume that the State’s remarks were in error, we cannot say
that the remarks warrant the reversal of Dominguez’s conviction, especially in
light of the fact that several witnesses, including the child victim, described
the incident in detail.  See Tex.
Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon 2005); Villalon v.
State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc) (holding that
the testimony of a child sexual abuse victim is sufficient to support a
conviction for aggravated sexual assault); Soto v. State, 267 S.W.3d
327, 332 (Tex. App.–Corpus Christi 2008, no pet.) (same); see also Ramon,
159 S.W.3d at 929; Mosley v. State, 983 S.W.2d at 259.  Thus, because the
record contains overwhelming evidence supporting the conviction, any possible error
associated with the State’s remarks would be harmless.  See Tex. R. App. P. 44.2; see also Ramon,
159 S.W.3d at 929; Mosley, 983 S.W.2d at 259.  Accordingly, we overrule
Dominguez’s sole issue on appeal. 

III.          
Conclusion

Having overruled Dominguez’s sole issue on appeal, we
affirm the judgment of the trial court.

                                                                                    _________________

Rogelio Valdez

                                                                                                Chief
Justice

 

Do not publish. 

Tex. R. App.
P.
47.2(b)

Delivered and filed the 

30th day of December, 2010.

 









[1] To protect the child’s
privacy, we refer to the child and his relatives by their initials.  See
Tex. R. App. P. 9.8; see also
Tex. Code Crim. Proc. Ann. art.
57.02(h) (Vernon Supp. 2010).

 





[2] Section
22.021(a)(1)(B)(iv) provides that a person commits aggravated sexual assault if
the person intentionally or knowingly “causes the anus of a child to contact
the mouth, anus, or sexual organ of another person, including the actor.”  Tex. Penal Code Ann. §
22.021(a)(1)(B)(iv) (Vernon Supp. 2010).  A “child” is defined as “a person
younger than 17 years of age.”  Id. §§ 22.011(c) (Vernon Supp. 2010),
22.021(b)(1).





[3] To the extent
that Dominguez argues that the State’s remarks interfered with his right to a
trial by jury, we note that the State, in the complained-of remarks,
specifically stated that the jury was to consider all of the evidence adduced
at trial.  Moreover, the State’s remarks merely explained that the evidence
overwhelmingly supported convicting Dominguez of the underlying offense.  In
addition, the record does not reflect that the jury was polled or that the
jurors were confused by the State’s remarks to the extent that they did not
consider and weigh the evidence adduced at trial to determine Dominguez’s guilt
or innocence.  Thus, we cannot conclude that the State’s closing argument
interfered with Dominguez’s right to a trial by jury.