

# NUMBER 13-10-00218-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

DEGOVERDO DOMINGUEZ, Appellant,

v.

THE STATE OF TEXAS, Appellee.

## On appeal from the 24th District Court of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Degoverdo Dominguez, was charged by indictment with aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iv), (2)(B)(1), (e) (Vernon Supp. 2010). A jury convicted Dominguez of the offense, and the trial court sentenced him to life imprisonment in the Institutional

Division of the Texas Department of Criminal Justice. By one issue, Dominguez argues that his conviction should be vacated and the case remanded for a new trial because the State made improper remarks during its closing argument. We affirm.

## I. BACKGROUND

The indictment in this case alleged that Dominguez intentionally or knowingly used his sexual organ to contact the anus of J.C.,[1] Dominguez's nine-year-old nephew. *See id.* § 22.021(a)(1)(B)(iv).[2] At trial, the State called several witnesses to testify about the incident. F.G., J.C.'s stepfather, testified that he is married to J.C.'s biological mother, G.G.; that Dominguez is G.G.'s brother; and that Dominguez goes by the nickname of "Dago."

One day after school, F.G. and J.C. were playing catch with a football outside. Shortly thereafter, F.G. and J.C. went inside to take a break because it was hot. Once inside, J.C. became nervous and scared and subsequently told F.G. about the incident. According to F.G., J.C. stated that he believed "Uncle Dago" was gay. When asked what was meant by that statement, J.C. explained that Dominguez "had touched [J.C.], pulled down [J.C.'s] pants, and [Dominguez] would turn [J.C.] around and put his hands on [J.C.] and that [Dominguez] put his penis in his back and started doing back and forth motions on [J.C.]." F.G. later clarified that J.C. told him that Dominguez had put

---

[1] To protect the child's privacy, we refer to the child and his relatives by their initials. *See* TEX. R. APP. P. 9.8; *see also* TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (Vernon Supp. 2010).

[2] Section 22.021(a)(1)(B)(iv) provides that a person commits aggravated sexual assault if the person intentionally or knowingly "causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iv) (Vernon Supp. 2010). A "child" is defined as "a person younger than 17 years of age." *Id.* §§ 22.011(c) (Vernon Supp. 2010), 22.021(b)(1).

2

his penis on J.C.'s "bottom." J.C. pleaded with F.G. not to tell G.G. because Dominguez had told him not to tell anyone, and because J.C. feared that Dominguez would be angry with him.

Despite J.C.'s protests, F.G. told G.G. about the incident. F.G. also recalled that Dominguez babysat J.C. often and that many of those visits resulted in J.C. spending the night with Dominguez. After telling G.G. about the alleged abuse, the family reported the incident to police.

Cynthia Ramirez, a forensic interviewer with the "Hope of South Texas Center," testified that she interviewed J.C. regarding the incident. When the interview began, J.C. was excited and happy; however, as they began to talk about the incident, J.C. became shy and nervous. J.C. demonstrated to Ramirez what had happened during the incident and showed how Dominguez would get on top of him and would move "up and down."

J.C. also testified as to his recollection of the incident. J.C. stated that Dominguez would babysit him while F.G. and G.G. would go out for dinner. J.C. remembered that he had slept at Dominguez's house thirty or forty times. Dominguez lived in a house with two other roommates, but J.C. noted that Dominguez had his own room and that the roommates never participated in the alleged abuse. When staying at Dominguez's house, J.C. would sleep in the same bed as Dominguez in Dominguez's room. J.C. also testified that Dominguez had told him to drink beer in the past. Regarding the incident, J.C. stated that he would be forced to lie face-down on the bed and that Dominguez would get on top of him. J.C. knew that Dominguez was on top of

3

him because he could feel Dominguez's stomach on his back. Dominguez would then pull down J.C.'s shorts and underwear to J.C.'s thighs and "go up and down." J.C. was told to turn around and to face the wall while the alleged abuse occurred. J.C. alleged that: (1) Dominguez touched J.C's "private" with his hands; and (2) he felt Dominguez's "wee-wee," which J.C. later identified as Dominguez's penis, on his "butt." After the incident, J.C. had to go "number two," and Dominguez made him promise not to tell anyone.

After the State rested its case-in-chief, Dominguez moved for a directed verdict. The trial court denied Dominguez's request, and the case was submitted to the jury. The jury ultimately convicted Dominguez of first-degree felony aggravated sexual assault, and the trial court sentenced him to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iv), (2)(B)(1), (e). This appeal ensued.

## II. THE STATE'S CLOSING ARGUMENT

By his sole issue on appeal, Dominguez argues that the State made remarks during its rebuttal to his closing argument which "tainted the verdict, harmed defendant[,] and caused an unjust verdict." Specifically, Dominguez complains about the following statements made by the State during closing argument:

> That's why I ask that you go back into the jury room, you elect a Foreman. It doesn't have to take long. I'm not asking you not to consider the evidence. *You don't owe this defendant anything. You've been away from your jobs and family two days and that's too long . . . .*

4

(Emphasis added). Dominguez's trial counsel objected and requested that the jury be instructed to disregard the State's remark; however, the trial court overruled Dominguez's objection and refused to issue the requested instruction. Because Dominguez objected to the error about which he complains on appeal and pursued his objection to an adverse ruling, we conclude that this issue has been preserved for our review. *See Landry v. State*, 706 S.W.2d 105, 109 (Tex. Crim. App. 1985) (holding that any improper jury argument is waived by a party's failure to object); *see also Gonzales v. State*, No. 13-04-628-CR, 2006 Tex. App. LEXIS 4020, at *5 (Tex. App.–Corpus Christi May 11, 2006, pet. ref'd) (mem. op., not designated for publication).

## A. Applicable Law

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007).

> Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding.

*Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980)). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).

5

Nevertheless, when analyzing any harm that may have been caused by an improper jury argument, we examine the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g)).

## B. Discussion

Responding to Dominguez's complaint on appeal, the State asserts that its remarks during closing argument were not "extreme, improper, harmful[,] or prejudicial" and that the remarks constituted a reference to the overwhelming weight of the evidence. We agree.

In analyzing the State's remarks during closing argument, we must not consider the statements in isolation; instead, we should review the closing arguments of both parties in order to determine the context in which the complained-of statements were made. *See Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996) ("The applicable legal standard of review is whether, *in light of the record as a whole*, there is a reasonable possibility the improper argument might have contributed to appellant's conviction.") (emphasis added); *see also Ozuna v. State*, 199 S.W.3d 601, 613 (Tex. App.–Corpus Christi Aug. 10, 2006, no pet.) (holding that the complained-of jury argument is considered in light of the record as a whole). In reviewing the State's

6

closing argument and rebuttal, we find that the complained-of statements countered several assertions made by Dominguez's trial counsel during his closing argument regarding the perceived weakness or non-existence of physical evidence tying Dominguez to the charged offense. *See Brown*, 270 S.W.3d at 570; *see also Berry*, 233 S.W.3d at 859. In particular, Dominguez's trial counsel argued that:

> Now this whole case is—You heard evidence from witnesses that never saw anything. All they said was what they were told. It was, basically, hearsay, going on what they were told. There was [sic] no eyewitnesses.
>
> As you heard the SANE witness testify, there was no physical manifestation of any injury. And I would submit, if something was going on that long, there would be some kind of physical evidence.
>
> In this day and age, when we have the ability to get DNA and physical evidence, all kinds of advanced physical evidence, to be unable to be able to produce some kind of physical evidence, that is not beyond a reasonable doubt. That's not competent evidence. And I would submit to you, just based upon those bases, the D.A. failed to prove their case.

The complained-of statements made by the State responded to the statements made by defense counsel that there was no competent evidence to support the charges against Dominguez. *See Brown*, 270 S.W.3d at 570; *see also Berry*, 233 S.W.3d at 859.

Furthermore, this situation is akin to that in the case of *Dominguez v. State*, 125 S.W.3d 755, 763 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd). In *Dominguez*, the State, during closing argument, suggested that "the jury take as much time as needed to deliberate, although, in reality, it would not need much time to reach a verdict." *Id.* The First Court of Appeals concluded that such an argument was proper as a summation of the weight of the evidence, even though appellant argued on appeal that

7

such an argument "impliedly asserted that the evidence establishing appellant's guilt was conclusive and that, therefore, the jury would reach a decision quickly." *Id.* Here, the State made a similar argument when taken in the context of the entire record. The State's argument refuted defense counsel's argument that there was no competent evidence adduced at trial to convict Dominguez of the charged offense and suggested that the evidence in support of convicting Dominguez was so overwhelming that the jury should be able to quickly return a guilty verdict, which would constitute a proper summation of the evidence. Thus, based on our review of the record, we cannot say that the State's remarks during its closing argument and rebuttal constituted a "willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial."[3] *See Wesbrook*, 29 S.W.3d at 115; *see also Cantu*, 939 S.W.2d at 633.

Further, even if we were to assume that the State's remarks were in error, we cannot say that the remarks warrant the reversal of Dominguez's conviction, especially in light of the fact that several witnesses, including the child victim, described the incident in detail. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 2005); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc) (holding that the testimony of a child sexual abuse victim is sufficient to support a conviction for aggravated sexual assault); *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.–Corpus

---

[3] To the extent that Dominguez argues that the State's remarks interfered with his right to a trial by jury, we note that the State, in the complained-of remarks, specifically stated that the jury was to consider all of the evidence adduced at trial. Moreover, the State's remarks merely explained that the evidence overwhelmingly supported convicting Dominguez of the underlying offense. In addition, the record does not reflect that the jury was polled or that the jurors were confused by the State's remarks to the extent that they did not consider and weigh the evidence adduced at trial to determine Dominguez's guilt or innocence. Thus, we cannot conclude that the State's closing argument interfered with Dominguez's right to a trial by jury.

Christi 2008, no pet.) (same); *see also Ramon*, 159 S.W.3d at 929; *Mosley v. State*, 983 S.W.2d at 259. Thus, because the record contains overwhelming evidence supporting the conviction, any possible error associated with the State's remarks would be harmless. *See* TEX. R. APP. P. 44.2; *see also Ramon*, 159 S.W.3d at 929; *Mosley*, 983 S.W.2d at 259. Accordingly, we overrule Dominguez's sole issue on appeal.

## III.  CONCLUSION

Having overruled Dominguez's sole issue on appeal, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
30th day of December, 2010.