COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-04-435-CR

 

 

DALE LEE HAMILTON                                                           APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

In a single issue, Dale Lee
Hamilton asserts error on the part of the trial court in failing to grant him a
mistrial during the voir dire of the jury panel that had been empaneled to hear
a DWI case against Hamilton.  We affirm.

 








II.  Background

During voir dire, the
prosecutor made the following statements to the jury panel:

MR.
ANGELINO: . . . .Now, I want to talk about the punishment range, okay?  Now, in a DWI first, that=s a
Class B misdemeanor.  DWI second is what
we call a Class A misdemeanor, which is punishable up to a year in jail.  Then we have a felony; when you have two
priors, it=s a
third-degree felony.  And a third-degree
felony is punishable from two years to ten years in the penitentiary and up to
a $10,000 fine, and that could be probated depending on what the person=s
criminal history is.  Now, in a
hypothetical case, there are certain circumstances that the legislature has
stated could make that punishment range go up. 
Now, if someone had gone to the penitentiary one time before and
committed a third-degree felony, committed a theft, okay, if a person committed
a theft, that was two to ten, and had gone to the penitentiary one time before,
it now jumps the punishment range from two to ten to two to 20.  If someone has gone to the pen two times
before, on the third-degree felony, that then bumps their punishment range up
to 25 years to life in T.D.C.  So,
basically, a person is being punished more if they=ve
gone to the penitentiary.  Does that make
anybody feel uncomfortable that someone gets punished more based on their
criminal history?  Mr. Neighbors, how do
you feel about that?

 

After
some questions and exchanges with other members of the venire, the prosecutor
made the following statements:

 

MR.
ANGELINO: Okay.  Now, the punishment
in this case is 25 years to 99 years and life.  Now, is there anybody here who feels
uncomfortable --

 

MR.
JUDD: Your Honor, may we approach the bench?

 

THE
COURT: Yes, sir.

 

(Discussion
off the record at bench)








(Following
held in presence of panel)

 

THE
COURT: The jury is instructed at this time that certainly the case has not been
proven to you and therefore, the range of punishment will be described for you.

 

MR.
JUDD: I apologize.  One more thing, we
need to approach the bench.

 

(Off
the record at bench)

 

(Following
held in presence of panel)

 

MR.
ANGELINO: Mr. Neighbors, if certain circumstances were proved where a person
might have been sent to the penitentiary two times prior to, and the punishment
range is 25 years to life, would you have any problem with giving someone 25
years based on the facts and circumstances that you don=t
know about?

 

MR.
NEIGHBORS: No.  (Emphasis added).

 

At
the conclusion of voir dire, Hamilton=s counsel restated his
objections and moved for a mistrial on the grounds that the prejudice was too
great to be cured by the instruction the trial court had given.  Specifically, Hamilton=s
counsel stated:

 

MR.
JUDD: About facts which were not in evidence, clearly.  Whether or not that would be the punishment
range depends on a great number of enhancement paragraphs that may or may not
be able to be proved up in this case. 
The Court granted my objection. 
We asked the Court to instruct the jury to disregard.  Quite frankly, I don=t
remember whether the Court did or did not. 
And we also asked for a mistrial, which the Court denied.  I think that accurately states what we did at
the bench.

 

THE
COURT: All right, Ms. Bender?








MS.
BENDER: Just for the record, I would like to add that, based on the Court=s
ruling, the State immediately removed that screen from view on the computer.

 

THE
COURT: All right.

 

MR.
JUDD: And, again, Your Honor, obviously it=s our position that at that
point, the prejudice or the damage had been done.  Clearly, the enhancement paragraph that would
enhance this beyond a third-degree felony would not be admissible in
guilt-innocence and would be unable to undo the taint associated with them
being told that he had two prior pen trips for purposes of
guilt-innocence.  And that=s the
basis of our motion for mistrial.

 

THE
COURT: Anything else, Ms. Bender?

 

MS.
BENDER: No, Your Honor.  I think it=s
completely appropriate to go into . . . punishment range and we=re
allowed to go into that and talk to the jurors about that.  And I think that was done.

 

THE
COURT: And the motion for mistrial is denied. 
Anything else?

 

Following a guilty verdict
and sentence, this appeal resulted.

III.  Standard of Review








This court reviews a trial
court=s ruling on a motion for mistrial for an abuse of discretion and must
uphold the trial court=s ruling if
that ruling was within the zone of reasonable disagreement.  Wead v. State, 129 S.W.3d 126, 129
(Tex. Crim. App. 2004).  An abuse of
discretion occurs Aonly when
the trial judge=s decision
was so clearly wrong as to lie outside that zone within which reasonable
persons might disagree.@  Cantu v. State, 842 S.W.2d 667,  682 (Tex. Crim. App. 1992), cert. denied,
509 U.S. 926 (1993).  In determining
whether a trial court abuses its discretion in denying a mistrial, a reviewing
court considers: (1) the severity of the misconduct; (2) curative measures; and
(3) the certainty of the conviction absent the misconduct.  Ramon v. State, 159 S.W.3d 927, 929
(Tex. Crim. App. 2004) (citing Mosely v. State, 983 S.W.2d 249 (Tex.
Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999)). 

Generally, an instruction to
disregard cures any prejudicial effect or improper remarks during voir
dire.  See Washington v. State,
484 S.W.2d 721, 723 (Tex. Crim. App. 1972), cert. denied, 411 U.S. 921
(1973). 

IV.  Application

A[B]oth the
State and the defense are entitled to question the jury panel on the applicable
law relating to enhanced punishments.@  Robinson v. State, 817
S.W.2d 822, 826 (Tex. App.CFort Worth 1991, pet. ref=d) (citing Martinez v. State, 588 S.W.2d 954, 956 (Tex. Crim.
App. 1979)).  There are limits, however,
on such an examination. 

According to section 36.01 of
the Texas Code of Criminal Procedure, 

The
indictment or information shall be read to the jury by the attorney
prosecuting.  When prior convictions are
alleged for purposes of enhancement only and are not jurisdictional, that
portion of the indictment or information reciting such convictions shall not be
read until the hearing on punishment is held as provided in Article 37.07.

 








Tex. Code Crim. Proc.
Ann. art. 36.01(a)(1) (Vernon Supp. 2005).

An example of this prohibited
conduct can be found in Frausto v. State, 642 S.W.2d 506 (Tex. Crim.
App. [Panel Op.] 1982), wherein the court stated,

The
purpose is prevention of the extreme prejudice which would almost inevitably
result from an announcement at the outset of the proceedings that the State
believes that the defendant was previously convicted of a particular offense at
a particular time and in a particular court . . . . [T]he prosecutor
recounted virtually all of the allegations contained in the enhancement
paragraph of the indictment, including the offense, cause number, date and
court of conviction.  We conclude
that the prosecutor=s
statement to the jury panel was the functional equivalent of reading to the
jury panel the enhancement paragraph to the jury, a violation within the
meaning and scope of Art. 36.01(1), V.A.C.C.P. 
This constituted reversible error . . . . To reiterate, a prosecutor may
inform the jury panel of the range of punishment applicable if the State were
to prove a prior conviction for enhancement purposes, but it may not inform the
jury of any of the specific allegations contained in the enhancement paragraph
of a particular defendant=s
indictment.

 

Id. at 508-09
(emphasis supplied).

On the other hand, not every
reference to enhanced punishment ranges for previous conduct violates article
36.01(a).  Consider Hammons v. State, 856
S.W.2d 797 (Tex. App.CFort Worth
1993, pet. ref=d), wherein
the court stated,








During voir dire, the prosecutor questioned
prospective jurors about their prior jury service, whether the previous cases
were criminal or civil, if a verdict had been reached, what punishment was
assessed, and if it was enhanced. 
Hammons asserts the purpose of these questions was to raise the Aspecter@ of
his prior criminal history in the minds of the jurors, thereby depriving him of
his right to a trial by a fair and impartial jury . . . . Hammons also assails
the prosecutor=s
line of questioning as a deliberate attempt to circumvent the purpose of Tex. Code Crim. Proc. Ann. art.
36.01(a) (Vernon Supp. 1993).  

Article 36.01 precludes reading the enhancement
portion of an indictment before the punishment phase of trial.  Id. 
The purpose of this statute is to prevent the extreme prejudice that
would almost inevitably result from an announcement at the outset of the
proceeding that the State believed the defendant had been previously convicted
of an offense.  Frausto v. State,
642 S.W.2d 506, 508 (Tex. Crim. App. [Panel Op.] 1982).  Violation of article 36.01 is reversible
error.  Id.

In Frausto the prosecutor recounted
virtually all of the allegations contained in the enhancement paragraph of the
indictment, including the offense, cause number, date, and court of
conviction.  The Frausto court
concluded the prosecutor=s
statements were the functional equivalent of reading the enhancement paragraph
of the indictment to the venire, in violation of article 36.01.  642 S.W.2d at 508.

Frausto is clearly inapposite on its
facts to the instant case.  Hammons makes
no assertion that the prosecutor mentioned his prior convictions in any
way.  Rather, he merely contends the
prosecutor planted the possibility of those convictions in the jurors=
minds by questioning them about whether the punishment they had assessed in
other cases had been enhanced.

The Frausto court ruled that a prosecutor
may inform the jury panel at voir dire of the range of punishment applicable
upon proof of a prior conviction for enhancement purposes.  642 S.W.2d at 509.  Surely that information would be no more suggestive
to the jury, or prejudicial to the defendant, than the questions propounded in
the case at bar.  We therefore find the
prosecutor=s
questioning did not violate article 36.01 or the Frausto rule, nor did
it violate 36.01 Hammons=
constitutional right to trial by an impartial jury.

 

Hammons, 856
S.W.2d at 802-03.

 













As the State points out, the
mention of enhancement paragraphs is not, standing alone, reversible
error.  See Tutt v. State,
940 S.W.2d 114, 119 (Tex. App.CTyler 1996, pet. ref=d) (A[T]he State
does not commit reversible error when it informs a jury panel that there is an
enhancement count, but does not allude to the specifics of the allegations in
the enhancement paragraph@).  But the prosecutor here has gone further and
in essence told the jury that Hamilton has previously been imprisoned on two
occasions.  This fits neither the facts
of Frausto nor Hammons, but lies in middle earth.  Even if such a comment constitutes error,
however, we hold that it was not an abuse of discretion for the trial court to
deny Hamilton a mistrial, based on the Ramon factors.  First, the conduct was not severe, and
second, curative measures were taken.  It
was a one-time event, the jury was instructed that the case had not been proven
and the range of punishment would be described to them, the prosecutor
apologized, and the jury was questioned subsequently, including some
individualized questioning, to be certain that they understood that any
criminal history was not to be considered when deciding guilt or
innocence.  Lastly, a DWI conviction was
a virtual certainty absent the conduct. 
Specifically, there was evidence to show that Hamilton was driving at
speeds of up to 90 miles per hour, that he veered across two lanes of traffic,
that he struck a median curb and balanced his truck over the curb, and that he
took longer than normal to stop for the officer.  There was also evidence to show that Hamilton
smelled like alcohol and that his eyes were bloodshot, watery, and very
heavy-looking.  And there was evidence to
show that Hamilton=s speech was
a little slurred and kind of loud, that Hamilton was unsteady and slow getting
out of the vehicle, that Hamilton left his door open after he got out, that he
could not or would not keep his head still during the HGN test, that the
officer discontinued field sobriety testing for safety reasons after Hamilton
stumbled toward traffic during the walk-and-turn test, that Hamilton urinated
in his pants, that there were unopened beer bottles and a cool open bottle of
Budweiser in Hamilton=s vehicle,
that he admitted to drinking three beers, that Hamilton=s breath tests registered .183 and .180, respectively, and that in
Officer Kiser=s opinion,
Hamilton was extremely intoxicated and did not have the normal use of his
mental or physical faculties.  The jury
also saw a videotape that corroborated the testimony of the officer.

Therefore, we cannot say that
the trial court erred in overruling Hamilton=s motion for mistrial, and his issue is overruled.

 

 

 

 

 

 








V.  Conclusion

Having overruled Hamilton=s single issue, we affirm the judgment of the trial court.

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
November 10, 2005











[1]See Tex. R. App. P. 47.4.