Hamilton v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-435-CR

DALE LEE HAMILTON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In a single issue, Dale Lee Hamilton asserts error on the part of the trial court in failing to grant him a mistrial during the voir dire of the jury panel that had been empaneled to hear a DWI case against Hamilton.  We affirm.

II.  Background

During voir dire, the prosecutor made the following statements to the jury panel:

MR. ANGELINO: . . . .Now, I want to talk about the punishment range, okay?  Now, in a DWI first, that’s a Class B misdemeanor.  DWI second is what we call a Class A misdemeanor, which is punishable up to a year in jail.  Then we have a felony; when you have two priors, it’s a third-degree felony.  And a third-degree felony is punishable from two years to ten years in the penitentiary and up to a $10,000 fine, and that could be probated depending on what the person’s criminal history is.  Now, in a hypothetical case, there are certain circumstances that the legislature has stated could make that punishment range go up.  Now, if someone had gone to the penitentiary one time before and committed a third-degree felony, committed a theft, okay, if a person committed a theft, that was two to ten, and had gone to the penitentiary one time before, it now jumps the punishment range from two to ten to two to 20.  If someone has gone to the pen two times before, on the third-degree felony, that then bumps their punishment range up to 25 years to life in T.D.C.  So, basically, a person is being punished more if they’ve gone to the penitentiary.  Does that make anybody feel uncomfortable that someone gets punished more based on their criminal history?  Mr. Neighbors, how do you feel about that?

After some questions and exchanges with other members of the venire, the prosecutor made the following statements:

MR. ANGELINO: Okay
.  Now, the punishment in this case is 25 years to 99 years and life. 
 Now, is there anybody here who feels uncomfortable --

MR. JUDD: Your Honor, may we approach the bench?

THE COURT: Yes, sir.

(Discussion off the record at bench)

(Following held in presence of panel)

THE COURT: The jury is instructed at this time that certainly the case has not been proven to you and therefore, the range of punishment will be described for you.

MR. JUDD: I apologize.  One more thing, we need to approach the bench.

(Off the record at bench)

(Following held in presence of panel)

MR. ANGELINO: Mr. Neighbors, if certain circumstances were proved where a person might have been sent to the penitentiary two times prior to, and the punishment range is 25 years to life, would you have any problem with giving someone 25 years based on the facts and circumstances that you don’t know about?

MR. NEIGHBORS: No.  (Emphasis added).

At the conclusion of voir dire, Hamilton’s counsel restated his objections and moved for a mistrial on the grounds that the prejudice was too great to be cured by the instruction the trial court had given.  Specifically, Hamilton’s counsel stated:

MR. JUDD: About facts which were not in evidence, clearly.  Whether or not that would be the punishment range depends on a great number of enhancement paragraphs that may or may not be able to be proved up in this case.  The Court granted my objection.  We asked the Court to instruct the jury to disregard.  Quite frankly, I don’t remember whether the Court did or did not.  And we also asked for a mistrial, which the Court denied.  I think that accurately states what we did at the bench.

THE COURT: All right, Ms. Bender?

MS. BENDER: Just for the record, I would like to add that, based on the Court’s ruling, the State immediately removed that screen from view on the computer.

THE COURT: All right.

MR. JUDD: And, again, Your Honor, obviously it’s our position that at that point, the prejudice or the damage had been done.  Clearly, the enhancement paragraph that would enhance this beyond a third-degree felony would not be admissible in guilt-innocence and would be unable to undo the taint associated with them being told that he had two prior pen trips for purposes of guilt-innocence.  And that’s the basis of our motion for mistrial.

THE COURT: Anything else, Ms. Bender?

MS. BENDER: No, Your Honor.  I think it’s completely appropriate to go into . . . punishment range and we’re allowed to go into that and talk to the jurors about that.  And I think that was done.

THE COURT: And the motion for mistrial is denied.  Anything else?

Following a guilty verdict and sentence, this appeal resulted.

III.  Standard of Review

This court reviews a trial court’s ruling on a motion for mistrial for an abuse of discretion and must uphold the trial court’s ruling if that ruling was within the zone of reasonable disagreement.  
Wead v. State
, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  An abuse of discretion occurs “only when the trial judge’s decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.”  
Cantu v. State
, 842 S.W.2d 667,  682 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993).  
In determining whether a trial court abuses its discretion in denying a mistrial, a reviewing court considers: (1) the severity of the misconduct; (2) curative measures; and (3) the certainty of the conviction absent the misconduct.  
Ramon v. State
, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (citing 
Mosely v. State
, 983 S.W.2d 249 (Tex. Crim. App. 1998), 
cert. denied
, 526 U.S. 1070 (1999)). 

Generally, an instruction to disregard cures any prejudicial effect or improper remarks during voir dire.  
See
 
Washington v. State,
 484 S.W.2d 721, 723 (Tex. Crim. App. 1972)
, 
cert. denied
, 411 U.S. 921 (1973). 

IV.  Application

“[B]oth the State and the defense are entitled to question the jury panel on the applicable law relating to enhanced punishments.”  
Robinson v. State
, 817 S.W.2d 822, 826 (Tex. App.—Fort Worth 1991, pet. ref’d) (citing 
Martinez v. State, 
588 S.W.2d 954, 956 (Tex. Crim. App. 1979)).  There are limits, however, on such an examination. 

According to section 36.01 of the Texas Code of Criminal Procedure,
 

The indictment or information shall be read to the jury by the attorney prosecuting.  When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

Tex. Code Crim. Proc. Ann.
 art. 36.01(a)(1) (Vernon Supp. 2005).

An example of this prohibited conduct can be found in 
Frausto v. State
, 642 S.W.2d 506 (Tex. Crim. App. [Panel Op.] 1982), wherein
 the court stated,

The purpose is prevention of the extreme prejudice which would almost inevitably result from an announcement at the outset of the proceedings that the State believes that the defendant was previously convicted of a particular offense at a particular time and in a particular court . . . . 
[T]he prosecutor recounted virtually all of the allegations contained in the enhancement paragraph of the indictment, including the offense, cause number, date and court of conviction
.  We conclude that the prosecutor’s statement to the jury panel was the functional equivalent of reading to the jury panel the enhancement paragraph to the jury, a violation within the meaning and scope of Art. 36.01(1), V.A.C.C.P.  This constituted reversible error . . . . To reiterate, a prosecutor may inform the jury panel of the range of punishment applicable if the State were to prove a prior conviction for enhancement purposes, but it may not inform the jury of any of the specific allegations contained in the enhancement paragraph of a particular defendant’s indictment.

Id
. at 508-09 (emphasis supplied).

On the other hand, not every reference to enhanced punishment ranges for previous conduct violates article 36.01(a).  Consider 
Hammons v. State, 
856 S.W.2d 797 (Tex. App.—Fort Worth 1993, pet. ref’d), wherein the court stated,

During voir dire, the prosecutor questioned prospective jurors about their prior jury service, whether the previous cases were criminal or civil, if a verdict had been reached, what punishment was assessed, and if it was enhanced.  Hammons asserts the purpose of these questions was to raise the “specter” of his prior criminal history in the minds of the jurors, thereby depriving him of his right to a trial by a fair and impartial jury . . . . Hammons also assails the prosecutor’s line of questioning as a deliberate attempt to circumvent the purpose of 
Tex. Code Crim. Proc. Ann
. art. 36.01(a) (Vernon Supp. 1993).  

Article 36.01 precludes reading the enhancement portion of an indictment before the punishment phase of trial.  
Id
.  The purpose of this statute is to prevent the extreme prejudice that would almost inevitably result from an announcement at the outset of the proceeding that the State believed the defendant had been previously convicted of an offense.  
Frausto v. State
, 642 S.W.2d 506, 508 (Tex. Crim. App. [Panel Op.] 1982).  Violation of article 36.01 is reversible error.
  Id.

In 
Frausto 
the prosecutor recounted virtually all of the allegations contained in the enhancement paragraph of the indictment, including the offense, cause number, date, and court of conviction.  The 
Frausto
 court concluded the prosecutor’s statements were the functional equivalent of reading the enhancement paragraph of the indictment to the venire, in violation of article 36.01.  642 S.W.2d at 508.

Frausto
 is clearly inapposite on its facts to the instant case.  Hammons makes no assertion that the prosecutor mentioned his prior convictions in any way.  Rather, he merely contends the prosecutor planted the possibility of those convictions in the jurors’ minds by questioning them about whether the punishment they had assessed in other cases had been enhanced.

The
 Frausto
 court ruled that a prosecutor may inform the jury panel at voir dire of the range of punishment applicable upon proof of a prior conviction for enhancement purposes.  642 S.W.2d at 509.  Surely that information would be no more suggestive to the jury, or prejudicial to the defendant, than the questions propounded in the case at bar.  We therefore find the prosecutor’s questioning did not violate article 36.01 or the 
Frausto
 rule, nor did it violate 36.01 Hammons’ constitutional right to trial by an impartial jury.

Hammons
, 856 S.W.2d at 802-03.

As the State points out, the mention of enhancement paragraphs is not, standing alone, reversible error.  
See
 
Tutt v. State
, 940 S.W.2d 114, 119 (Tex. App.—Tyler 1996, pet. ref’d) (“[T]he State does not commit reversible error when it informs a jury panel that there is an enhancement count, but does not allude to the specifics of the allegations in the enhancement paragraph”).  But the prosecutor here has gone further and in essence told the jury that Hamilton has previously been imprisoned on two occasions.  This fits neither the facts of 
Frausto
 nor 
Hammons, 
but
 
lies in middle earth. 
 Even if such a comment constitutes error, however, we hold that it was not an abuse of discretion for the trial court to deny Hamilton a mistrial, based on the 
Ramon
 factors.  First, the conduct was not severe, and second, curative measures were taken.  It was a one-time event, the jury was instructed that the case had not been proven and the range of punishment would be described to them, the prosecutor apologized, and the jury was questioned subsequently, including some individualized questioning, to be certain that they understood that any criminal history was not to be considered when deciding guilt or innocence.  Lastly, a DWI conviction was a virtual certainty absent the conduct.  Specifically, there was evidence to show that Hamilton was driving at speeds of up to 90 miles per hour, that he veered across two lanes of traffic, that he struck a median curb and balanced his truck over the curb, and that he took longer than normal to stop for the officer.  There was also evidence to show that Hamilton smelled like alcohol and that his eyes were bloodshot, watery, and very heavy-looking.  And there was evidence to show that Hamilton’s speech was a little slurred and kind of loud, that Hamilton was unsteady and slow getting out of the vehicle, that Hamilton left his door open after he got out, that he could not or would not keep his head still during the HGN test, that the officer discontinued field sobriety testing for safety reasons after Hamilton stumbled toward traffic during the walk-and-turn test, that Hamilton urinated in his pants, that there were unopened beer bottles and a cool open bottle of Budweiser in Hamilton’s vehicle, that he admitted to drinking three beers, that Hamilton’s breath tests registered .183 and .180, respectively, and that in Officer Kiser’s opinion, Hamilton was extremely intoxicated and did not have the normal use of his mental or physical faculties.  The jury also saw a videotape that corroborated the testimony of the officer.

Therefore, we cannot say that the trial court erred in overruling Hamilton’s motion for mistrial, and his issue is overruled.

V.  Conclusion

Having overruled Hamilton’s single issue, we affirm the judgment of the trial court.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 10, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.