**Opinion issued June 23, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00166-CR

———————————

**NIARE QUENETTE LYTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 69744**

---

## MEMORANDUM OPINION

A jury convicted appellant Niare Quenette Lyte of murder and assessed punishment at 50 years in prison. *See* TEX. PENAL CODE § 19.02(b)(1). Lyte asserts on appeal that the trial court abused its discretion in two ways: by admitting evidence that she previously had been arrested for threatening the complainant, and

by refusing to grant a mistrial after the prosecution made an improper comment during the punishment phase.

Finding no reversible error, we affirm.

## Background

The complainant, Jasmine Miller, was a friend of a sister of appellant Niare Quenette Lyte. Once when her apartment lost electricity, Miller briefly stayed at Lyte's family's apartment. After a dispute arose, Lyte told Miller to leave the apartment. Miller then called the police and reported that Lyte had threatened to kill her. Lyte was arrested and held in jail overnight, though her sister insisted that Miller had not been threatened. Lyte was never convicted of any crime relating to this incident.

Roughly two weeks later, Lyte confronted Miller outside the apartment complex. Miller ran away, but Lyte pursued her. Several witnesses followed and saw Lyte yelling and kicking at Miller. Lyte fled the scene, and the witnesses found Miller bloodied and gasping for air. Miller died of her injuries from the assault. Subsequent medical examination showed that she had sustained several stab wounds from a knife.

After the police contacted her, Lyte voluntarily gave a written statement in which she described her prior hostility toward Miller, including her prior arrest. Lyte stated that when Miller ran away she thought it was funny, and she no longer

wanted to "beat" her. Lyte's statement did not describe any physical altercation between her and Miller. The police investigators also recorded two separate interviews with Lyte; the first recording was audio-only, and the second a video recording.

At trial, the State introduced the written statement, the audio recording of the first interview, and the video recording of the second interview. Lyte objected on the basis of Rule 403 for both the written statement and the audio recording. The court overruled the objection but gave the following limiting instruction to the jury:

> The State intends to introduce evidence of these recordings of extraneous crimes or bad acts other than the one charged in this indictment. This evidence is for the purpose of assisting you, if it does, for purpose of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence thereof, mistake, or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any were committed, you can only consider the crime or bad act for the purpose submitted.

For the video recording, Lyte offered no specific objection other than "the previous objections," which the judge noted had been overruled.

The jury convicted Lyte of murder. During the punishment phase, Lyte called several witnesses to testify about her character, though she did not testify herself. Many of these witnesses testified about the positive way Lyte interacted

3

with the rest of her family. The defense also asked questions relating to these character witnesses' feelings about the verdict, including the following exchange:

Defense: And when you heard about the allegations or about the murder, what did you think?

Witness: I didn't believe it at all. It's not what she's capable of doing.

Defense: How do you feel about the verdict?

Witness: I wasn't there. I don't understand it. But I don't agree too much with it.

In the middle of the punishment hearing, the prosecutor stated in front of the jury, "Judge, we'll stipulate that all these people will come in and say she's very motherly and a good person and never would have seen this coming if they'll stipulate that she did it."

Outside of the presence of the jury, defense objected and moved for a mistrial, claiming that this was an improper comment on Lyte's failure to testify. The court noted that the language used by the prosecutor did appear to request that defense counsel and defendant stipulate to the crime. The prosecutor denied this and stated that the comment was intended to request that the witnesses stipulate that they were aware that the jury found Lyte guilty of the crime. The judge told the parties that he intended to sustain the objection and instruct the jury to disregard, but he would not rule on a mistrial at that time. The judge also clarified his intention to avoid repeating the prejudicial comments by giving a specifically

worded instruction. The court eventually told the jury, "you are instructed to disregard the comment made by Mr. Caldwell right before we broke the first time."

The trial court ultimately overruled the motion for mistrial. The jury sentenced Lyte to 50 years in prison. Lyte appealed.

**Analysis**

**I.    Admissibility of prior arrest**

In her first issue, Lyte asserts that the trial court erred by admitting evidence that she previously had been arrested for threatening the complainant. Lyte argues that this evidence should not have been admissible under Rule 403 of the Texas Rules of Evidence. The State responds that this was proper evidence of motive and identity, making its probative value substantially outweigh any danger of unfair prejudice. Consequently, it was admissible.

We review a trial court's decision to admit evidence for abuse of discretion. *Santellan v. State*, 939 S.W.2d 155, 168–69 (Tex. Crim. App. 1997). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion and the ruling will be upheld. *Id.* at 169.

Rule 403 states that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. The trial court is

entitled to broad discretion in ruling on a Rule 403 objection. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). When a trial court balances the probative value of the evidence against the danger of unfair prejudice, there is a presumption in favor of the evidence's probative value. *Smith v. State*, 355 S.W.3d 138, 154 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Mechler*, 153 S.W.3d at 440.

The first factor of the Rule 403 analysis looks to how compellingly the evidence serves to make a fact of consequence more or less probable. *Id.* The State argued that the evidence showed evidence of Lyte's potential motive in committing the murder, as well as her identity when there was no eyewitness to the actual stabbing. The State also argues on appeal that the evidence was admissible as relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense. *See* TEX. CODE CRIM. PROC. art. 38.36. Lyte argues that because the allegations that she threatened Miller were unsubstantiated, they do not serve to make any facts in this case more probable.

We conclude that the trial court reasonably could have found that the evidence of Miller's accusation resulting in Lyte's prior arrest made it more

probable that Lyte had a motive to attack Miller. Even if the accusation of a threat was a false one, the fact that Lyte was arrested as a result was relevant to a potential motive. It also helped to establish Lyte's state of mind at the time of the offense as permitted by statute, which she put in issue through her affidavit, in which she stated that after Miller ran away, she no longer wanted to hurt her.

The second factor asks whether the evidence had the potential to impress the jury in an irrational but indelible way, thereby creating an "unfair" prejudice. *Mechler*, 153 S.W.3d at 440. In this case, the evidence of Lyte's prior arrest due to Miller's accusation undoubtedly was prejudicial, but not unfairly prejudicial, as it provided direct evidence of potential motive.

The third factor deals with the time needed to develop the evidence and whether this would distract the jury from consideration of the indicted offense. *Id.* at 441. Lyte asserts that at least an hour of trial was devoted to presenting the challenged evidence, including the recorded statements and testimony about them. However, in the course of an eight-day trial with 148 separate exhibits, an hour is not a relatively inordinate amount of time. Furthermore, the evidence was directly linked to the offense through both the testimony and the court's limiting instruction, which weighs against a finding that the jury was distracted from the charged offense. *See id.*

The fourth factor focuses on the proponent's need for the evidence, and includes considerations of whether the fact in question was disputed and whether the proponent had other evidence to establish that fact. *Id.* Lyte concedes that without "the statements regarding Appellant's arrest, there was limited evidence showing her motive to harm Miller." Whether Lyte had the motive to kill Miller was a disputed issue throughout the trial, and it was contested even in the punishment phase. Therefore, this factor weighs in favor of admissibility.

We conclude that the trial court did not abuse its discretion in determining that the Rule 403 factors weighed in favor of the admissibility of the evidence of Lyte's prior arrest for threatening Miller. *See id.* at 440–41. We overrule Lyte's first issue.

## II. Motion for mistrial

In her second issue, Lyte contends that a mistrial was required because the prosecutor's comment during the punishment phase was an implied comment on her exercise of her right not to testify. The prosecutor stated: "Judge, we'll stipulate that all these people will come in and say she's very motherly and a good person and never would have seen this coming if they'll stipulate that she did it." Lyte's objection to the comment was sustained, and the jury was instructed to disregard it, but the trial court declined to grant a mistrial.

8

Lyte argues that this comment caused incurable constitutional harm by violating her privilege against self-incrimination. The State responds that the comment did not create a clear and necessary implication regarding Lyte's failure to testify, and that any harm caused by the comment was cured by the judge's instruction, obviating the need for a mistrial.

An improper comment on a defendant's failure to testify may violate both the federal and state constitutions, as well as the Texas Code of Criminal Procedure. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 38.08; *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). We must reverse constitutional error unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a).

The privilege against self-incrimination extends to the punishment phase at trial, and it may be asserted even if the defendant testified during the guilt stage. *Randolph*, 353 S.W.3d at 891. When assessing whether a defendant's self-incrimination rights have been violated, a court must view the prosecutor's comment from the jury's standpoint and resolve any ambiguities in the State's favor. *See id.* To violate the privilege, the State's reference to the defendant's failure to testify must be a "clear and necessary" implication. *Id.* "If the language might reasonably be construed as merely an implied or indirect allusion, there is no

9

violation." *Id.* Comments during the punishment stage that argue that a defendant is not deserving of leniency or a probated sentence because he has not taken responsibility for his actions or shown remorse can constitute an impermissible comment on the failure to testify. *See id.* at 891–92.

The error alleged in this case is not the trial court's response to the objection nor the instruction to disregard, but the trial court's failure to grant Lyte's motion for a mistrial. In reviewing a motion for mistrial, an appellate court uses an abuse-of-discretion standard and must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

A mistrial is an extreme remedy that is granted only when the improper conduct is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins*, 135 S.W.3d at 77. To determine whether improper argument warranted a mistrial, this court must balance three factors: (1) the severity of the misconduct; (2) measures adopted to cure the misconduct; and (3) the certainty of the punishment assessed. *Martinez v. State*, 17 S.W.3d 677, 693 (Tex. Crim. App. 2000); *see also Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007); *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004). This harm analysis is "conducted in light of the trial court's curative instruction." *Hawkins,* 135 S.W.3d at 77.

The first factor, "severity of the misconduct," correlates with "the magnitude of the prejudicial effect of the prosecutor's remarks." *Id.* In this case, the comment did not clearly and necessarily implicate Lyte's failure to testify. *See Randolph*, 353 S.W.3d at 891. While there was some ambiguity about whether the prosecutor's allusion—"if they'll stipulate that she did it"—referenced a stipulation from Lyte herself or from the witnesses, even a request for Lyte to stipulate to the verdict would not constitute a comment on her failure to testify. *See id.* at 891–92. The request to stipulate to the guilty verdict was at most an indirect allusion to Lyte's failure to take responsibility for the crime. *See id.* Furthermore, while the implication of the comment may have been negative toward the defense's case, the comment did not argue that Lyte was undeserving of leniency, and thus it was less prejudicial than actual argument against her receiving a lighter punishment on this basis. *See id.*

The second factor, the measures adopted to cure the misconduct, includes any instruction to disregard the argument in question. *See Archie*, 221 S.W.3d at 700. In this case, the trial court sustained the objection and instructed the jury to disregard the comment. The phrasing of the instruction avoided repeating the prosecutor's statement and thus attempted to prevent any further effect on the jury. We conclude that this instruction was sufficient to ameliorate any potential harm from the statement. *See id.*; *Temple v. State*, 342 S.W.3d 572, 599 (Tex. App.—

Houston [14th Dist.] 2010), *aff'd on other grounds*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

Because the comment in this case occurred during the punishment stage, we analyze the third factor with regard to the certainty of the punishment assessed. *See Archie*, 221 S.W.3d at 700; *Martinez*, 17 S.W.3d at 693. Lyte was convicted of murder, which is a first-degree felony with a maximum sentence of 99 years of imprisonment. *See* TEX. PENAL CODE §§ 12.32, 19.02(b)(1). The jury sentenced Lyte to 50 years of imprisonment, which is substantially less than the maximum penalty. Given the severity of the crime of murder and the strength of the prosecution's evidence of premeditation, we conclude that the assessment of punishment was not substantially affected by the prosecution's comment. *See Archie*, 221 S.W.3d at 700; *Martinez*, 17 S.W.3d at 693–94.

We conclude that the trial court did not abuse its discretion in refusing to grant Lyte's motion for a mistrial. *See Randolph*, 353 S.W.3d at 891; *Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 77. We overrule Lyte's second issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).