Opinion issued September 24, 2009











 


In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00060-CR






HEYWOOD JOSEPH SHOLARS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 1035439






OPINION


 A jury convicted appellant, Heywood Joseph Sholars, of capital murder. (1) The
trial court sentenced appellant to life in prison. In two points of error, appellant
argues that (1) the trial court erred in using a stair-step instruction which prohibited
consideration of a lesser offense in determining guilt as to the charged offense and
in permitting prosecutorial jury argument that repeated the error; and (2) the evidence
presented at trial was factually insufficient to show that appellant intentionally shot
the complainant or intended to shoot another person.

 We affirm.

Background


 On April 7, 2005, at approximately 9:00 p.m., appellant and Jesse Davis
traveled to a shopping center on Griggs Road in Houston, Texas. Appellant and
Davis arrived at the shopping center, stood on the sidewalk and watched as patrons
of the Winning World gaming room at 5060 Griggs Road entered and exited the
illegal gaming business. Appellant was carrying a black gun in his pocket. Both
appellant and Davis were wearing black shirts, black shorts, and black hats. Paul
Boutte arrived at the gaming room and rang the doorbell to gain entry. The manager,
Melissa Rivera, opened the door to let Boutte into the gaming room. As Boutte
entered the gaming room, appellant and Davis ran down the sidewalk toward the
gaming room. Appellant and Davis ran behind Boutte and began to push him into the
gaming room. An unidentified customer shouted, "Don't let them in." Boutte
quickly turned and tried to close the door behind him to prevent appellant and Davis
from entering the gaming room. 

 Appellant was standing outside the door of the gaming room; Davis was
standing behind appellant. Appellant and Boutte were struggling as Boutte tried to
prevent appellant from entering the gaming room. The complainant saw Boutte
struggling to keep appellant outside and came up behind Boutte to assist him. 
Appellant opened the door and placed his foot in the door to pry it open. Appellant
was able to open the door approximately six inches. He took the gun from his pocket
with his right arm and pointed it at Boutte through the door. Appellant fired the gun
once and paused for approximately two seconds before firing the gun again. The
complainant was struck in the abdomen. Appellant did not speak throughout the
entire transaction of events. 

 After the second shot, Davis grabbed appellant's right arm and pulled it out of
the door frame. Appellant and Davis ran away from the scene and passed Yosly
Ordonez's home. Ordonez was on the porch of her home when she heard noises
resembling gunshots. Soon after she heard the noises, appellant and Davis ran in
front of the house. She asked appellant and Davis why they were running "like you
did something." Neither responded to Ordonez's question. Appellant and Davis
disposed of the gun, ran to their car, which was parked at a nearby apartment
complex, and drove away from the scene. On April 12, 2005, after receiving an
identification from Ordonez, Houston Police Department ("HPD") officers arrested
appellant. Appellant was charged with committing the offense of capital murder by
attempting to commit a robbery and intentionally causing the death of the
complainant by shooting him with a deadly weapon, namely a firearm.

 Trial began on January 8, 2008. At trial, the State presented testimony from
Boutte. Boutte testified that as he was struggling to prevent appellant from opening
the door, he saw appellant take the gun from his pocket. Appellant aimed the gun
toward Boutte. Boutte testified that he used his left hand "and started tussling with
him with the gun and the gun kept going back and forth." He also testified that
appellant shot the gun "more than two times." 

 The State also presented testimony from Ordonez. Ordonez testified that she
was an acquaintance of both appellant and Davis because they lived in the same
neighborhood. She immediately recognized them when they ran in front of her house.
As they were running in front of her house, she saw an object in appellant's hand but
was not certain whether appellant was carrying a gun. When she asked them why
they were running, appellant and Davis failed to respond. Ordonez testified that
appellant and Davis ran toward three apartment complexes down the street. 

 The State also presented testimony from Davis. Davis testified that he pled
guilty to aggravated robbery in this case and was awaiting sentencing at the time of
his testimony. He stated that he and appellant had been friends and associates for
over 10 years. Davis testified that appellant wanted to rob the gaming room and
asked him to assist in the robbery. Appellant knew the layout of the gaming room
and also knew where the gaming room's money was stored. Appellant also possessed
a gun, which Davis described as a ".357 Magnum." Davis testified that, during the
incident, he and appellant were trying to force themselves into the gaming room when
Boutte blocked their entry. During the struggle with Boutte, appellant pulled his gun
out of his pocket with his right hand and pointed it inside the door frame. Davis
testified that he could not see the gun after appellant pointed it inside the door frame.
However, he heard appellant fire the gun once. Appellant paused for two seconds and
fired the gun again. Davis testified that after the second shot he took appellant's right
arm and pulled it out of the door frame. He and appellant then ran away from the
gaming room.

 The State presented testimony from HPD Officer D. Shorten. Shorten testified
that he investigated the crime scene and obtained statements from Boutte, Ordonez,
Rivera, and other witnesses. He prepared two different photo spreads, one containing
appellant's picture and one containing Davis's picture. On April 8, 2005, he
presented the photo spreads to Boutte, but Boutte could not make an identification of
either appellant or Davis. He also presented the photo spreads to Ordonez. Ordonez
identified appellant as one of the people running in front of her home in the period
after the incident. Shorten testified that, on April 13, 2005, HPD police officers
presented Boutte with a "video lineup" that included appellant. Boutte identified
appellant as the shooter.

 Appellant presented testimony from Rudy Vargas, a private investigator. 
Vargas testified that he interviewed Ordonez and that she told him she was not certain
that appellant was carrying a gun when he ran in front of her house. Vargas testified
that Ordonez said the object appellant was carrying looked like a "big white gun." 

 At the end of the guilt/innocence phase, the trial court read the entire charge
to the jury. It stated, in relevant part:

 Now, if you find from the evidence beyond a reasonable doubt that on
or about the 7th day of April, 2005, in Harris County, Texas, [appellant]
did then and there unlawfully, while in the course of committing or
attempting to commit the robbery of Melissa Rivera, intentionally cause
the death of [the complainant] by shooting [the complainant] with a
deadly weapon, namely, a firearm, then you will find the defendant
guilty of capital murder, as charged in the indictment.


 Or, if you believe from the evidence, beyond a reasonable doubt that
[appellant] in Harris County, Texas, on or about the 7th day of April,
2005, intending to cause the death of Paul Boutte by shooting at Paul
Boutte with a deadly weapon, namely a firearm while in the course of
committing a robbery of Melissa Rivera, did then and there cause the
death of [the complainant] by shooting [the complainant] with a deadly
weapon, namely a firearm while in the course of committing or
attempting to commit a robbery of Melissa Rivera, then you will find the
defendant guilty of capital murder as charged in the indictment. 


 Unless you so find from the evidence beyond a reasonable doubt, or if
you have a reasonable doubt thereof, you will acquit the defendant of
capital murder and next consider whether [appellant] is guilty of the
lesser offense of felony murder. 


 . . . . 

 

 Unless you so find from the evidence beyond the reasonable doubt, or
if you have a reasonable doubt thereof, you will acquit the defendant of
felony murder and next consider whether [appellant] is guilty of the
lesser offense of aggravated robbery.


 . . . . 

 Unless you so find from the evidence beyond the reasonable doubt, or
if you have a reasonable doubt thereof, you will acquit the defendant of
aggravated robbery and next consider whether [appellant] is guilty of the
lesser offense of manslaughter.


 . . . . 

 

 If you have a reasonable doubt as to whether the defendant is guilty of
any offense defined in this charge you will acquit the defendant and say
by your verdict "Not Guilty." 


 Regarding the jury charge, the State made the following closing argument to
the jury, in relevant part:

 [State]: Remember how lessers work and how you are
instructed to deliberate on them. You have to decide
whether he is guilty or not guilty of capital murder
first. If you have a reasonable doubt, then you must
acquit him of capital murder. And remember, it's an
individual deliberation. If you believe he's guilty of
capital murder, then that is your deliberation. And
all 12 of you, in order to get to a lesser offense and
start deliberating about that, you are told in that
charge--

 

 [Appellant]: Objection as to any instructions at this point as to
how to deliberate. That's outside the charge.

 

 [Court]: Just restate your argument. That's overruled.

 

 [State]: Yes, ma'am. That charge instructs you that you
must first deliberate on the higher offense and only
if, effectively only if you acquit of capital murder do
you then consider the next offense of felony murder. 
And only if you acquit of felony murder so you go
down to the next. The bottom line is when you go
back there to deliberate and you believe beyond a
reasonable doubt that [appellant] intended to kill one
of those two men and he did kill [the complainant]
while he was trying to commit a robbery, he is guilty
of capital murder and that is it. You do not
deliberate about any of and do not discuss the lessers
at all. 

 

 On January 16, 2008, the jury convicted appellant of capital murder and the
trial court sentenced him to life in prison. Appellant filed notice of appeal.

Jury Instruction and Prosecutorial Error


 In the first part of his first point of error, appellant argues that the trial court
erred in using a stair-step instruction that prohibited consideration of a lesser offense
in determining guilt as to the charged offense. Appellant also argues that the error
"was echoed in prosecutorial argument," to appellant's harm. 

 1. Jury Instruction

 Appellant first complains that the jury charge was a "stair-step" charge that
required the jury unanimously to decide guilt or innocence as to the greater offense
of capital murder "before even considering whether the appellant was guilty of any
lesser offense." He argues that such a charge is inconsistent with the State's burden
of proof beyond a reasonable doubt of every element of the crime. He cites to
Apprendi v. New Jersey, in which the United States Supreme Court held that, as a
matter of due process of law, "any fact that increases the penalty for a crime beyond
the prescribed statutory maximum" must be submitted to a jury and proved beyond
a reasonable doubt. 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000). Appellant
argues that Apprendi "also applies to distinctions between greater and lesser offenses
which are distinguished by some element in the greater which is absent from the
lesser" and that "stair-step" instructions deprive a defendant of his constitutional right
to have all the elements of each crime with which he is charged considered. 
Appellant states that "to make Apprendi effective, a jury should be called upon to
compare a greater offense and a lesser offense, with attention paid to the element
which distinguishes the two offenses." He contends that "a stair-step instruction not
only fails to assure such a comparison, but actually precludes it through specific
instruction" from deciding the greater offense first without considering the lesser. 
We disagree with appellant's claim that the instruction given in this case was a stair-step instruction.

 A claim of error in the jury charge is reviewed using the procedure set out in
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), overruled on other
grounds, Rodriguez v. State, 758 S.W.2d 787 (Tex. Crim. App. 1988). Barrios v.
State, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). The first step is to determine
whether there is error in the charge. Barrios, 283 S.W.3d at 350; Ngo v. State, 175
S.W.3d 738, 743 (Tex. Crim. App. 2005). If there was error and the appellant
objected to the error at trial, reversal is required if the error is calculated to injure the
rights of the defendant, i.e., if there is some harm. Barrios, 283 S.W.3d at 350;
Almanza, 686 S.W.2d at 171. If the error was not objected to, it must be fundamental
and will require reversal only if it was so egregious and created such harm that the
defendant did not have a fair and impartial trial. Barrios, 283 S.W.3d at 350;
Almanza, 686 S.W.2d at 171. The degree of harm is determined in light of the entire
jury charge, the state of the evidence, including the contested issues and the weight
of the probative evidence, the argument of counsel, and any other relevant
information revealed by the record of the trial as a whole. Almanza, 686 S.W.2d at
171. 

 The proper construction of the jury charge in this case is controlled by Barrios. 
Reaffirming and clarifying its prior holding in Boyett v. State, 692 S.W.2d 512 (Tex.
Crim. App. 1985), the Court of Criminal Appeals held in Barrios that the type of
instruction at issue in this case is a proper sequencing instruction of the type appellant
seeks and not a "stair-step instruction" that requires unanimity of the jury at any stage
prior to the verdict. Barrios, 283 S.W.3d at 352-53; see Boyett, 692 S.W.2d at 516. 

 In Barrios, the appellant argued, similarly to appellant in this case, that an
instruction telling the jury to "acquit" the defendant if it has a reasonable doubt that
he is guilty of the greater offense and next consider the lesser offense and the view
that the sequencing instruction requires unanimity before the jury can consider lesser-included offenses are mutually exclusive. 283 S.W.3d at 352. If the defendant is
convicted of the greater offense, the inquiry ends; if he is acquitted under the
sequencing instruction, there is "nothing to compare the lesser-included offense to
when subsequently considering the instruction on benefit of the doubt." Id. The
disposition of the greater offense has by that time already been decided by the jury,
and the instruction on benefit of the doubt becomes superfluous. Id.

 The Court of Criminal Appeals stated, "Appellant's conclusion arises from a
narrow interpretation of the charge. Unanimous verdicts are the final decisions of a
jury, delivered to the court after its deliberations are complete." Id. Under the
sequencing instruction, the order in which the parts of the jury charge are considered
is left to the discretion of the jury. See id. Such a jury instruction also adequately
instructs jurors to consider the defendant's requested instructions on lesser included
offenses. Boyett, 692 S.W.2d at 516. The trial judge reads the entire charge to the
jury before it retires to deliberate. Barrios, 283 S.W.3d at 353. Thus the jurors will
have heard the instruction on the benefit of the doubt before considering the issue of
guilt on any of the offenses included in the charge. Id. "Therefore, even if, and
perhaps especially if, the jurors cannot agree as to guilt on the greater offense, they
have already been instructed that they may consider guilt as to the lesser offense
before deciding on a verdict as to the greater offense." Id. 

 The court observed that the instruction's "use of 'acquit' as it is understood in
relation to delivery of a verdict is at odds with the context of the instruction" in
relation to jury deliberations, in which "the intended meaning seems to be 'have a
reasonable doubt of or cannot agree on guilt,'" and that the charge might be clearer,
but the charge, read as a whole, instructed the jury that at its discretion it might
consider the lesser-included offenses before making a final decision as to the greater
offense. Id. The court thus held that the charge allowed the jury to consider the
entire charge as a whole and that the sequencing instruction did not require the jury
to unanimously agree that a defendant was not guilty of the greater offense before it
could consider a lesser-included offense. Id. The charge, therefore, was not
erroneous. Id.

 We conclude, likewise, that the virtually identical instruction in this case was
a sequencing instruction that did not instruct the jury that it must unanimously acquit
appellant of the greater offense before proceeding to the lesser offense, but instead
required it to unanimously acquit him or convict him of one of the offenses charged
only after the jury had considered whether he was "guilty of any offense defined in
the charge." Therefore, the charge was proper.

 Having determined that there was no error in the jury charge, we overrule the
first part of appellant's first issue.

 2. Jury Argument

 In the second part of his first issue, appellant argues that the trial court erred
in permitting the State to make an argument to the jury interpreting the instructions
in the charge as stair-step instructions that required them unanimously to convict or
acquit appellant of capital murder before considering whether he might be guilty only
of the lesser included charge of murder.

 Appellant complains of part of the State's closing argument paraphrasing the
trial court's instructions to the jury, in which the State argued as follows:

 [State]: You're going to see periodically in the charge
admonishments like this. If you have a reasonable doubt
thereof, you will acquit on capital murder and next
consider the lesser offense. You're going to see an
admonishment at the end of all the lessers that says if you
believe from the evidence beyond a reasonable doubt the
defendant is guilty of either capital murder or one of the
lessers, you resolve the doubt in the defendant's favor. 


 An admonishment to you to resolve doubt like that
in the defendant's favor is not directions for you to go back
in the jury room, talk to the 12 jurors, and when you realize
somebody else thinks maybe it's a lesser and you think it's
capital murder, that you must, absolutely, at that moment
give up and go the lesser because they disagree with you. 


 This is deliberations. You should go back and you
should discuss. And just because there's an initial
discussion does not mean that you automatically have to
reduce to the lowest charge. Remember how lessers work
and how you are instructed to deliberate on them. You
have to decide whether he is guilty or not guilty of capital
murder first. If you have a reasonable doubt, then you
must acquit him of capital murder. And remember, it's an
individual deliberation. If you believe he's guilty of
capital murder, then that is your deliberation. And all 12
of you, in order to get to a lesser offense and start
deliberating about that, you are told in that charge--

 

 [Appellant]: Objection as to any instructions at this point as to how to
deliberate. That's outside the charge.

 

 [Court]: Just restate your argument. That's overruled.

 

 [State]: Yes, ma'am. That charge instructs you that you must first
deliberate on the higher offense and only if, effectively
only if you acquit of capital murder do you then consider
the next offense of felony murder. And only if you acquit
of felony murder do you go down to the next. The bottom
line is when you go back there to deliberate and you
believe beyond a reasonable doubt that [appellant] intended
to kill one of those two men and he did kill [the
complainant] while he was trying to commit a robbery, he
is guilty of capital murder and that is it. You do not
deliberate about any of and do not discuss the lessers at all. 


(emphasis added). 

 Appellant argues that the State introduced a unanimity requirement into its
statement of the law and that the trial court erred in failing to sustain his objection to
the State's misstatement of the law and thus deprived him of his constitutional right
to due process by requiring him to mount a successful defense to capital murder
before considering the lesser included charge of felony murder or any other lesser
included charge. He argues that the State's argument violated the rule set forth in
Apprendi that it is a violation of constitutional due process for a state legislature to
remove from a jury the assessment of facts, other than the fact of prior conviction,
that increase the prescribed range of penalties to which a defendant is exposed. See
530 U.S. at 490, 120 S. Ct. at 2362-63. Appellant contends that the State's jury
argument lessened the burden of proof required for the jury to convict appellant of the
greater offense of capital murder because the jurors could not compare evidence in
support of that offense with the evidence in support of felony murder, focusing on the
distinguishing elements. See id.

 Improper jury argument

 To be permissible, jury argument must fall within one of four areas: (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3) response
to argument of opposing counsel; or (4) plea for law enforcement. Brown v. State,
270 S.W.3d 564, 570 (Tex. Crim. App. 1990). "It is not error for the State to quote
or paraphrase the jury charge, even if the charge presents a negative instruction to the
panel." Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). However,
argument that misstates the law or is contrary to the court's charge is improper. Id.;
Burke v. State, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983); Grant v. State, 738
S.W.2d 309, 311 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd). By overruling
the defense's objection to the prosecution's misstatement of the law, a trial court puts
the stamp of approval on the prosecutor's misstatement of the law. See Griffin v.
State, 779 S.W.2d 431, 434 (Tex. Crim. App. 1989); Burke, 652 S.W.2d at 790; Lee
v. State, 971 S.W.2d 130, 131 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd). 

 Here, the State paraphrased the jury instruction correctly by telling the jurors
that, while they had to decide whether appellant was "guilty or not guilty of capital
murder first," if they had a reasonable doubt they had to acquit him of capital murder,
"[a]nd remember, it's an individual deliberation." The State then stated, "And all 12
of you, in order to get to a lesser offense and start deliberating about that, you are told
in that charge--." Appellant timely objected "as to any instructions at this point as
to how to deliberate. That's outside the charge." While the trial court overruled
appellant's objection, it also instructed the State to restate its argument. After the
court's admonishment to "restate your argument," the State did not finish its
statement to the jurors as to how to deliberate or introduce a unanimity requirement
into the charge. As appellant noted in his brief, the State's closing argument tracked
the language of the trial court's charge, a charge that the Court of Criminal Appeals
approved in Barrios. 

 We hold that the trial court did not err in overruling appellant's objection to the
State's jury argument.

 We overrule appellant's first point of error.

Factual Sufficiency

 In his second point of error, appellant argues that the evidence presented at trial
was factually insufficient to sustain his conviction because the evidence failed to
prove appellant's intent to kill the complainant. 

 Standard of Review 

 Evidence is factually insufficient to support the verdict if it is clearly wrong or
manifestly unjust or against the great weight and preponderance of the evidence. 
Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). A factual
sufficiency review involves three ground rules. Lancon v. State, 253 S.W.3d 699,
704 (Tex. Crim. App. 2008). First, we must recognize that a jury has already passed
on the facts, and we must accord the jury the proper deference to avoid substituting
our judgment for that of the jury. Id. at 704-05 (citing Clewis v. State, 922 S.W.2d
126 (Tex. Crim. App. 1996)). Second, where we find the facts determined by the jury
to be insufficient to affirm a conviction, we must clearly lay out and explain how the
evidence supporting the verdict is too weak on its own, or how contradicting evidence
greatly outweighs evidence supporting the verdict. Id. at 705. Finally, we view all
of the evidence in a neutral light when conducting this review. Id. We may only set
aside a verdict where the evidence supporting the verdict is so weak as to render the
verdict clearly wrong or manifestly unjust. Id. (citing Cain v. State, 958 S.W.2d 404,
406 (Tex. Crim. App. 1997)). 

 Capital Murder 

 A person commits capital murder if he intentionally or knowingly causes the
death of an individual and intentionally commits the murder in the course of
committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual
assault, arson, or obstruction or retaliation. Tex. Penal Code Ann. §§ 19.02(b)(1),
19.03(a)(2) (Vernon 2003 & Supp. 2008); Dominguez v. State, 125 S.W.3d 755, 761
(Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). A person commits robbery if, in
the course of committing theft and with intent to obtain or maintain control of the
property, he intentionally, knowingly, or recklessly causes bodily injury to another,
or intentionally or knowingly threatens or places another in fear of imminent bodily
injury or death. Tex. Penal Code Ann. § 29.02(a) (Vernon 2003); Dominguez, 125
S.W.3d at 761. A deadly weapon is a firearm or anything manifestly designed, made,
or adapted for the purpose of inflicting death or serious bodily injury, or anything that
in the manner of its use or intended use is capable of causing death or serious bodily
injury. Tex. Penal Code Ann. § 1.07(17) (Vernon Supp. 2008); see Wright v. State,
591 S.W.2d 458, 459 (Tex. Crim. App. 1979) (holding that evidence defendant
pointed "gun," "pistol," or "revolver" at complainant was sufficient to prove use of
"deadly weapon").

 "The distinguishing element between felony murder and capital murder is the
intent to kill." Fuentes v. State, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999). Intent
is most often proven through the circumstantial evidence surrounding the crime. 
Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), overruled on other
grounds, Fuller v. State, 829 S.W.2d 191 (Tex. Crim. App. 1992); Dominguez, 125
S.W.3d at 761. A jury may infer intent from any facts that tend to prove its existence,
such as the acts, words, and conduct of the defendant. Hernandez, 819 S.W.2d at
810; Beltran v. State, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); Dominguez, 125
S.W.3d at 761. Additionally, intent to kill may be inferred from the use of a deadly
weapon, unless it would not be reasonable to infer that death or serious bodily injury
could result from the use of the weapon. Jones v. State, 944 S.W.2d 642, 647 (Tex.
Crim. App. 1996); Dominguez, 125 S.W.3d at 762 (holding evidence permitted
inference of intent to kill when defendant and other members of his gang planned to
rob person walking alone at night, and, in course of theft or attempted theft of
complainant, defendant retrieved loaded shotgun from car trunk and shot complainant
in abdomen, resulting in complainant's death). When a deadly weapon is fired at
close range, and death results, the law presumes an intent to kill. Childs v. State, 21
S.W.3d 631, 635 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd).
 Here, the jury was charged with the law on transferred intent. Transferred
intent occurs when a defendant, with the required culpable mental state, intends to
injure or harm a specific person but injures or harms a different person or both. Tex.
Penal Code Ann § 6.04(b)(2) (Vernon 2003).

 The State presented testimony from Boutte that appellant and his accomplice
stood on the sidewalk outside an illegal gaming room and waited for Boutte to enter
it. Boutte testified that, when he gained entry, appellant tried to push him into the
gaming room. He resisted and held appellant outside the door of the gaming room. 
Appellant then reached through the opening in the door and pointed a gun at him. 
Boutte testified that, as the struggle continued, appellant fired one shot. Appellant
then paused for two seconds and fired another shot, striking the complainant in the
abdomen and killing him. Boutte testified that appellant fired the gun "more than two
times." The State also presented testimony from Davis. Davis testified that, during
the struggle with Boutte, appellant pulled a gun out of his pocket and placed it
through the door frame with his right arm. Appellant fired the gun once, paused for
two seconds, and fired the gun again. Davis testified that he pulled appellant's right
arm out of the door frame after the second shot. He and appellant then ran from the
scene. 

 The jury was free to infer that appellant intended to kill either Boutte or the
complainant when he pointed the gun at Boutte and fired the shots into the gaming
room. See Jones, 944 S.W.2d at 647; Childs, 21 S.W.3d at 635; see also Tex. Penal
Code Ann § 6.04(b)(2). We conclude that the evidence of appellant's intent to kill
was not so weak as to render the verdict clearly wrong or manifestly unjust. See
Lancon, 253 S.W.3d at 704-05. We hold that the evidence presented to the jury was
factually sufficient to prove that appellant had the intent to kill the complainant. See
id.; Dominguez, 125 S.W.3d at 761-62. 

 We overrule appellant's second point of error. 

Conclusion

 We affirm the judgment of the trial court.




 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Hanks, and Bland.

Publish. Tex. R. App. P. 47.2(b).
1. See Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2008) ("A person commits
an offense if he commits murder as defined under Section 19.02(b)(1) [and] the
person intentionally commits the murder in the course of committing or attempting
to commit kidnaping, burglary, robbery, aggravated sexual assault, arson, obstruction
or retaliation, or terroristic threat . . . .").